CAPITOL STAGES, INC., *et al. v.* STATE *ex rel.* HEWITT, DIST. ATTY.

(Division B. June 2, 1930.)

[128 So. 759. No. 28565.]

578

J. Morgan Stevens, of Jackson, and H. V. Wall, of Brookhaven (Thos. L. Bailey, of Meridian, amicus curiae) for appellants.

Hugh V. Wall, of Brookhaven, for appellants.

Thos. L. Bailey, of Meridian, amicus curiae.

Geo. T. Mitchell, Attorney-General, and Forrest B. Jackson, Assistant Attorney-General, for the state.

Argued orally by **H. V. Wall** and **J. Morgan Stevens**, for appellant, and by **Forrest B. Jackson**, Assistant Attorney-General, for appellee.

**Anderson, J.**, delivered the opinion of the court.

The state, on relation of F. D. Hewitt, district attorney of the Fourteenth judicial district of this state, filed its bill against the appellants, the Capitol Stages, Incorporated, and the Pickwick Greyhound Lines, Incorporated, charging that they were wrongfully and illegally using state highway No. 51, which runs through the counties of Pike, Lincoln, and Copiah, in said district, to such an extent as to constitute a public nuisance. The bill prayed for an injunction, restraining appellants from so continuing to use the highway, and for a decree against appellants in the sum of ten thousand dollars for damages already done the public by such use. Appellants demurred to the bill, which demurrer was by the court overruled, and an appeal to the supreme court was granted to settle the principles of the cause.

Perhaps the appellee's case could not be more clearly and succinctly stated than by setting out the bill, which, leaving off its formal parts, follows:

"Comes the complainant, the state of Mississippi by F. D. Hewitt, the legally elected qualified and acting district attorney of the 14th Circuit Judicial District of

Mississippi, who prosecutes for and on behalf of the state of Mississippi, the said circuit court district embracing the counties of Pike, Lincoln and Copiah and files this its amended bill by leave of the court, first having been obtained so to do, and sues the Capitol Stages, Incorporated and the Pickwick Greyhound Lines, Incorporated, defendants, who have an agent in Jackson, Hinds county, Mississippi, upon whom service of process can be had and alleges the following, to-wit:

"That the defendant corporation, the Capitol Stages, was incorporated under the laws of the state of Mississippi and afterwards was purchased and taken over and is now being operated by the Pickwick Greyhound Lines, Incorporated, a non-resident corporation and that the defendants operate, as a common carrier for hire, a line of automobile busses through the counties of Copiah, Lincoln and Pike, over and along Public Highway 51, running through each of said counties, that the said Public Highway 51 is now maintained by the state highway commission of the state of Mississippi.

"That the said automobile busses consist of a coach called the 'Pickwick Greyhound' and is operated and propelled by gasoline motors over, through, across and along the public highways of said Pike, Lincoln and Copiah counties, traversing said counties from the north to the south, a distance of approximately one hundred miles; that said defendants operate from four to six busses per day over and along said highways and run through the entire length of the 14th Judicial District of Mississippi and said counties aforesaid, but do not comply with the law regulating common carriers.

"That the said Pickwick Greyhound busses are operated by the defendants, and are nearly as large as a passenger coach on a passenger train; that they have a seating capacity of from twenty-five to forty people and that they travel on, over and across said highways of

said counties at a terrific rate of speed to-wit: at from thirty to fifty miles per hour.

"That said motor busses used by the defendants are large motor vehicles weighing, without load, from eight to ten thousand pounds and in excess of that allowed by law to travel the highways of said counties and are heavier than is permitted by law and the regulations on said highways; that the tires are heavy, hard and of large size and pound the roads to pieces.

"Complainant alleges that the graveled highways of said counties were laid out and built for light traffic and not with the purpose in view of carrying the heavy traffic going over them by the defendants aforesaid; that said roads were originally dirt road and later the roads were built up on a dirt embankment and a thin coat of gravel placed on top of the road bed for the convenience of vehicles like wagons, buggies and light automobile traffic for use by the general public and that the said roads are not now able to stand up under the heavy traffic that they are subjected to by the defendants and are being torn to pieces far beyond any expectation and largely in excess of the repairs required in the ordinary travel of such roads.

"That the said busses are wearing away the roads of said counties which are maintained by the state highway department of the state of Mississippi and that said roads have been greatly damaged every day almost beyond repair; that the wooden bridges, the soft road bed, with a little gravel on it, cannot stand the strain of such heavy traffic; that said roads were built by creating separate road districts and issuing bonds against all of the property situated in said road districts for the payment of said bonds and for their up-keep and will have to be far sooner rebuilt if said busses are permitted to continue their wasteful and negligent use of same.

"That the defendants have never contributed one cent to the building of said roads and that it does not now

contribute but a very small amount to the up-keep of said highways, and that is by way of paying a small tax on gasoline, none of which is purchased in said counties.

"That said busses are of such weight, dimensions and proportions that in traveling over said highways, said roads being in many places not more than eighteen feet wide and twenty-four feet at the very widest part, there are frequent collisions with vehicles and the small cars used by the traveling public; that the defendant's busses, as now used and operated over said highway 51, do not and cannot give one-half of the road as required by law and frequently automobiles and persons are wrongfully driven into the ditch and the ordinary traffic is generally interferred with on the roads—said busses using and occupying more of the road space than they are entitled to, thereby abusing the primary purpose of said roads— the said roads being primarily intended for the use by citizens and not for use by common carriers for hire, such as defendants.

"Complainant alleges that the use of the highway by the defendants is of such character as was never contemplated under the provisions in the constitution and the statutes for laying out, constructing and maintaining said highways.

"That the excessive and unnecessary wear and tear of the roads caused by these busses in wet weather is incalculable—the difficulty of passing busses either going in the same or opposite directions with a citizen is very dangerous indeed—the bus occupying the center of the road, running at a high speed, and not giving way because they are so heavy that they would stall and the traveling public are forced to take to the ditch, making said bus operation a public nuisance, on these lightly constructed highways and should be abated.

"That the danger of passing defendant's busses in dry weather, creating such a cloud of dust and obstructing the view of on-coming vehicles, makes it dangerous

indeed, often causing collisions that would be otherwise avoided.

"That the increased cost of maintaining the highways of these clay and graveled roads and wooden bridges on account of the damage done to the roads by the defendants also make the operation of said busses a nuisance and public calamity to the traveling public.

"That said roads and bridges are incapable of standing the usage to which these busses subject them and as operated by the defendants, the roads require a heavier and larger expenditure of public money for repairs that would not be otherwise required if they ceased operation over said road.

"That the order of the Mississippi Railroad Commission and the statutes authorizing said commission to act, merely granted to the defendants the right to operate in the state and does not deal with or attempt to deal with the regulations under which that right should be exercised and that the railroad commission merely gave a certificate of the right to do business in the state, leaving it to the counties section 170 of the constitution to fix and determine the police regulations under which the right may be exercised; and said certificates and taxes are unconditional and void that all of the certificates of the railroad commission are subordinate to the higher right of the board of supervisors to fix the terms and conditions under which its highway may be used and is subordinate to the rights of the general public; that this power was granted to the board of supervisors who possesses the authority directed from the constitution and the board of supervisors have the right to regulate the use of highways of said counties. A copy of the order of the board of supervisors of each of said counties regulating motor cars and vehicles under the police powers filed herewith and made a part of this bill the same as if written herein.

"That the defendants are abusing the permits to operate said bus lines over said highway 51 granted by the railroad commission.

"Complainant alleges that the small privilege tax of two dollars per seat per bus under the Acts of 1928, chapter 230, to each county is very small in comparison with the privileges exercised and with the privilege tax assessed against the Illinois Central Railroad Company, paralleling said highway 51, and other persons.

"Complainant alleges that the highways are limited for use by reason of the width and inadequacy of the road bed and loose gravel on top of same for heavy traffic and that it is within the police power of the state to conserve the highways and that reasonable regulations and use may be prescribed in order to prevent the injury and damage to them.

"Complainant alleges that on account of the increase of the number and size of the vehicles used upon the highways, danger, the wear and tear are increased and that large busses used by the defendants as common carriers for hire should be excluded both for safety and economy and for the preservation of our highways and for the safety and convenience of the traveling public.

"Complainant alleges that the operation of busses by the defendants being of the length and weight that they are, the character and size and kind and condition and character of the roads and the speed they pass over said road, will destroy the highway, impede and congest traffic and makes said highways almost useless to the people for their use and benefit and said bus line operation is extraordinary traffic on said highway.

"Complainant alleges that by reason of the fact that our highways are narrow and built upon dirt bed with a small coat of gravel over the top, together with the wooden bridges and the tremendous size of the busses operated by the defendants—said busses running in the center of the road at all times while passing persons and

vehicles upon the highways meeting and overtaking them and running at a rapid and negligent and reckless rate of speed and putting the traveling public into the ditch and the small amount of contribution by way of taxes made by the support and maintenance of said highways and the great weight of the busses cutting the roads to pieces and beating and cutting the highways down, subjecting them to a tremendous amount of wear and tear and the danger to the general public and the ordinary traffic thereon which they bring about, make the operation of said busses by the defendants a common nuisance and should be abated. Being a public service corporation acting as a common carrier for hire, the said defendants have no right or authority to use said public highways aforesaid, in the way and manner aforesaid; that their abuse of the certificates, in many instances, denies the general public the equal use of said roads.

''Complainant alleges that the damage sustained by the state in the maintaining said highways by reason of the operating said busses over said highway 51 and through said counties of Pike, Lincoln and Copiah amount to ten thousand dollars or more above what the ordinary use of said roads cost to keep up in the ordinary contemplated use of said roads.

''That it is the duty of the state highway commission under section 5631 of the Code to maintain said highways and that the highway commission is merely advisory to the board of supervisors as to the regulation and use of the highways.

''Premises Considered: complainant prays the court that summons issue for the defendants to appear on Monday, December —, 1929, to plead, answer or demur to this amended bill, answer under oath being specially waived, and that a temporary injunction issue restraining the defendants above named and each of them from operating their busses or similar vehicles over, across and along said counties in the manner and conditions, and enjoining

the use by said defendants or either of them of said highways in the manner aforesaid as a nuisance and that upon final hearing such injunction be made permanent and the court will be pleased to render judgment in favor of the complainant and against the defendants for the sum of ten thousand dollars, as damages already sustained by the state in consequence of the wrongful use of said highways by said defendants.

"Complainant prays for all such other, further and general relief as the premises or proof may warrant or equity and good conscience require, and for such will ever pray."

One of the grounds of demurer was that under the law the state had no right to bring this action on the relation of the district attorney. Appellee's position is that, if the state has a cause of action, it could be brought and prosecuted alone by the attorney-general—that no district attorney has that authority.

The conclusion we have reached renders it unnecessary to consider any other ground of demurrer.

Section 173 of the Constitution of 1890 provides that there shall be an attorney-general of the state, elected at the same time, and in the same manner the governor is elected, whose term of office shall be four years, and whose compensation shall be fixed by law; and his qualifications shall be the same as provided in the constitution for judges of the circuit and chancery courts. Section 174 of the constitution provides that there shall be a district attorney for each circuit court district, to be elected in the manner provided by law, whose term of office shall be four years, and whose duties and compensation shall be prescribed by law.

Section 1661, Code 1906, section 1465, Hemingway's Code 1927, provides as follows: "It shall be the duty of the district attorney to appear in the circuit courts and prosecute for the state in his district all criminal prosecutions and all civil cases in which the state or any

county within his district may be interested; but if two or more counties are adversely interested, the district attorney shall not represent either. Any district attorney may also institute and prosecute to final judgment or decree any case in the name of the state, against any person or corporation for any violation of the constitution or the laws of this state, in order to enforce any penalties, fines or forfeitures imposed by law in any court of his district having jurisdiction, with like effect as if the suit was instituted by the attorney-general.''

Section 1, chapter 238, Laws 1918, section 3701, Hemingway's Code 1927, provides as follows: ''The attorney-general and the several district attorneys are hereby authorized to institute or defend any suits arising out of any act or order of the tax commission or the railroad commission affecting the laws and revenues of the state, and are also clothed with such other authority as is conferred upon them at common law.''

In State v. Key; 93 Miss. 115, 46 So. 75, the attorney-general prosecuted an appeal to the supreme court in a habeas corpus case. His authority to prosecute the appeal was challenged. There is no statute expressly authorizing the attorney-general to prosecute such appeals. The court held that the attorney-general had the common-law power to prosecute the appeal. Later the case of Board of Supervisors of Lauderdale County v. Bank, 117 Miss. 132, 77 So. 955, was decided; in that case the supreme court held that the attorney-general had no common-law powers; no reference was made in the opinion to the Key case. The latter case was decided on March 11, 1918. On March 27, 1918, chapter 238, Laws 1918, section 1 of which conferred on the attorney-general common-law powers, went into effect, and is now the law. It therefore becomes unnecessary to decide whether the Key case or the Bank case, referred to above, correctly interpreted section 173 of the constitution as respects the powers of the attorney-general. He has the powers of the attorney-general at common law, and, in addition,

such as have been conferred on him by statute; while the district attorneys have no powers under section 174 of the Constitution, except those prescribed by statute.

The question is, Where is the line of demarcation between the powers of the attorney-general and district attorneys? The last clause of the statute first above copied provides that the attorney-general and the several district attorneys "are also clothed with such other authority as is conferred upon them at common law." This clause conferred no common-law powers on the district attorneys, for the simple reason that they had no such powers at common law. There was no such office as district attorney known to the common law. But the statute, as stated above, was effective to confer on the attorney-general common-law powers, if section 173 of the constitution had not already done so.

Under the act regulating common carrier motor vehicles, chapter 128, Laws 1926, sections 9297-9314, inclusive, of Hemingway's Code of 1927, appellees were granted, by the railroad commission, a certificate of convenience and necessity, authorizing them to use highway 51 as common carriers. Section 5 of the act, section 9301, Hemingway's Code 1927, vested in the railroad commission the authority and duty to supervise and regulate automobile transportation companies in this state, to fix just, reasonable, and nondiscriminatory rates, fares, charges, and classifications; to regulate the facilities, actions, services, and safety of operations of such transportation companies, make rules and regulations for the inspection of motor vehicles so used, provide for the installation of safety devices thereon, the installation of the proper automatic speed controllers, if advisable, require the filing of annual and other reports, traffic schedules, and other data, by such companies, and regulate them in all matters affecting the relationship between them and the traveling and shipping public, etc.

Section 170 of the Constitution of 1890 confers on the boards of supervisors full jurisdiction over roads, bridges,

and ferries, except that the legislature is given the power to designate certain highways as "State Highways" and place such highways under the control and supervision of the state highway commission for construction and maintenance. As shown by the bill in this case, highway No. 51 comes within this provision of section 170 of the constitution. It is a state highway, maintained by the state highway commission out of state and federal aid funds. Such a highway is no longer exclusively a county road; it is a state highway—an intercounty, and oftentimes an interstate, highway.

"At common law the duties of the attorney-general, as chief law officer of the realm were very numerous and varied. He was the chief legal adviser of the crown, and was entrusted with the management of all legal affairs, and the prosecution of all suits, civil and criminal, in which the crown was interested." He had authority to institute proceedings to abate public nuisances affecting and endangering public safety and convenience; he had the power to control and manage all litigation on behalf of the state; he could intervene in all actions which were of concern to the general public, including the right to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights. 2 R. C. L., secs. 4 and 5, pp. 915-917.

The office of district attorney, unlike that of attorney-general, is of modern origin, its duties are prescribed by statute; the civil and criminal business of the state, which once pertained to the office of attorney-general, has been by the legislature divided between the two offices for convenience. The office of district attorney has been carved out of the office of attorney-general, and made an independent office. The attorney-general may advise the district attorneys, as he does other officers in his capacity as chief law officer of the state. Nevertheless the two offices are separate and distinct. The powers of the dis-

trict attorneys can neither be increased nor diminished by the attorney-general. Their powers are statutory, not common law, and they cannot encroach on the powers of the attorney-general. 1 R. C. L., sec. 2, p. 914.

The question is whether section 1661, Code 1906, section 1465, Hemingway's Code 1927, or section 1, chapter 238, Laws 1918, section 3701, Hemingway's Code 1927, copied above, conferred power on the state, on the relation of the district attorney, to bring this action.

The first of those sections provides, in substance, that it shall be the duty of the district attorney to appear in the circuit court and prosecute for the state "in his district" all criminal prosecutions and all civil cases, in which the state or county within his district may be interested, "but if two or more counties are adversely interested the district attorney shall not represent either; and it is made his duty also to institute and prosecute to final judgment or decree any case in the name of the state against any person or corporation for any violation of the laws of the state," in order to enforce any penalties, fines, or forfeitures imposed by law, in any court "of his district having jurisdiction," with like effect as if the suit was instigated by the attorney-general.

The second of those sections provides, among other things, that the district attorneys are authorized to institute or defend any suits arising out of any acts or orders of the tax commission or the railroad commission affecting the laws and revenue of the state.

It is inconceivable that the legislature intended by these statutes to confer as large powers upon the district attorneys as are possessed by the attorney-general. Such a construction could, and probably would, in some cases lead to such a conflict of authority between the two offices as would result in the destruction, instead of promotion, of the public interest. We think that a fair and reasonable interpretation of the language and purpose of the statutes prescribing the authority and duties of the dis-

trict attorney is: (1) They have no authority to represent the state in any litigation outside of the counties of their district; and (2) they have no authority to represent the state in any litigation in their districts where the subject-matter of such litigation is of state-wide interest, as distinguished from local interest, except as provided by the last clause of section 1661, Code 1906, section 1465, Hemingway's Code of 1927. That clause provides that the district attorneys, in their respective districts, in the name of the state, may prosecute to final judgment actions against persons or corporations for a violation of the constitution or laws of the state, in order to enforce any penalties, fines, or forfeitures imposed by law. It might properly be said that the collection of fines and penalties for the state are matters of state-wide, rather than of local, concern. As to all litigation, the subject-matter of which is of state-wide interest, the attorney-general alone has the right to represent the state.

It will be observed that the section of the statute first above copied gives the district attorneys, along with the attorney-general, authority to institute or defend suits arising out of any act or order of the tax commission or railroad commission, affecting the laws and revenues of the state. In the first place, this suit did not arise out of any order of the railroad commission; there is no charge that the appellants had violated any order of the railroad commission. Appellants were given a franchise by the railroad commission to use the highway. There is no charge in the bill that appellants were violating their franchise, or violating the laws of the state in the use of the highway, and, if there were such a charge, under the principles above laid down, it would be a matter of state-wide public interest, and not local, and any litigation in reference thereto on behalf of the state would rest with the attorney-general alone. There is no charge in the bill that any order of the railroad commission has been violated which affects the public revenues of the state.

Highway No. 51 not only runs through Pike, Lincoln, and Copiah counties, but runs through several other counties in this state, constituting other judicial districts. Conflicting litigation instituted by the various district attorneys in the districts through which the highway runs, involving the legality of appellants' operations upon the highway, can be easily imagined; and, if permitted by law, might result in great confusion and detriment to the public welfare. On the other hand, with the authority to institute such actions in the attorney-general alone, no such result would be probable. The attorney-general would have in view, not purely local interests, but the paramount state-wide public interests.

Appellee contends, however, that this action cannot be abated by demurrer, that a plea in abatement was necessary. It should be borne in mind that the facts which show that the district attorney had no authority to bring this suit appear on the face of the bill. The general rule is that a want of capacity in the plaintiff to sue should be set up by a plea in abatement, but there is an exception to this rule, and that is, where the facts showing the want of capacity to sue appears on the face of the record, then it can be taken advantage of by demurrer. 1 Ency. Pl. & Pr., sec. 5, p. 10; 1 C. J., sec. 185, p. 116.

Reversed and dismissed.