DUNN CONST. CO. v. CRAIG, STATE TAX COLLECTOR.

(In Banc. May 12, 1941. Suggestion of Error Overruled Sept. 22, 1941.)

[1 So. (2d) 166. No. 34595.]

Watkins & Eager, Chambers & Trenholm, and **J. H. Thompson,** all of Jackson, **Heidelberg & Roberts,** of Hattiesburg, and **Jacobson, Snow & Covington,** of Meridian, for appellant.

686

Forrest B. Jackson, W. E. Gore, and Creekmore & Creekmore, all of Jackson, for appellee.

Butler & Snow, Stevens & Stevens, Lotterhos & Travis, all of Jackson, and **Thomas J. Tubb,** of West Point, Attorneys as Amici Curiae.

Argued orally by **Pat Eager** and **E. L. Trenholm**, for appellant, and by **W. E. Gore** and **Forrest B. Jackson**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

The suit is brought by the appellee, Carl N. Craig, in his official capacity as State Tax Collector, on behalf of

the State of Mississippi, in the Circuit Court of Hinds County, to collect from the appellant, Dunn Construction Company, a tax of 1% on the gross income received by it from the State Highway Commission, representing the contract price for certain road construction work, and which was paid to such contractor in installments of various amounts during the period from March 24, 1937, to July 14, 1938, inclusive, aggregating the sum of $54,032.39, the demand being for the 1% tax thereon, plus interest and 10% damages, alleged to have been levied by Section 2-e of Chapter 119, Laws of 1934, as amended, upon every person engaging or continuing within this state in the business of contracting, and for the privilege of engaging in such business.

It is alleged in the amended declaration that the amount due the state by the defendant and other contractors doing work for the State Highway Commission for tax on the gross income derived from the performance of their contracts prior to March 18, 1940, is in excess of $750,000; that on January 7, 1941, the plaintiff requested the Chairman of the State Tax Commission by letter of that date to make an assessment of the tax due by the defendant Dunn Construction Company; and that the Commissioner has declined to make such assessment or to collect any taxes due by the defendant, and by other contractors similarly situated, on the gross income received prior to the said 18th day of March, 1940, as requested. A copy of the letter to the Commissioner and of his reply thereto are made exhibits, and are asked to be considered as a part of the pleading.

It is further alleged that on January 11, 1941, the plaintiff requested the Attorney-General of the state, in his official capacity as such officer, to join with the plaintiff as a party litigant to enforce the collection of the taxes thus claimed to be due in this and other similar suits now pending. This request was also by letter, a copy of which is likewise made an exhibit, and from which it appears that the Attorney General was already advised of the

reasons given by Mr. Stone, Chairman of the State Tax Commission, for declining to make the assessment or collect the tax in question, a copy of the Commissioner's reply to the Chief Attorney of the State Tax Collector being referred to in the letter to the Attorney-General as having been theretofore sent to the latter. This official also declined to intervene.

Section 2-h of the said Chapter 119, Laws of 1934, as amended, provides that: "In computing the amount of tax levied under this act, there shall be excepted from the gross income of the business, or gross proceeds of sales, as the case may be, so much thereof as is derived from sales to the United States government or the state of Mississippi, its departments and institutions, . . ." In view of this provision, found contained in the general "Sales Tax Law," Chapter 119, Laws of 1934, amending Chapters 90 and 91, Laws of 1932, it seems that prior to March 18, 1940, the departmental construction given the same by the State Tax Commission was that it exempted from the tax "the gross income of the business" as well as "gross proceeds of sales," when the income was derived from the federal or state government, its departments and institutions, whether for work done, or for sales made under such circumstances, the first part of the sentence above quoted from the statute being susceptible of such interpretation. The natural result of this departmental construction was that the contractors performing work under contracts with one of the departments of the state did not prior to the date aforesaid take into consideration this item of expense and add it to the contract price when bidding for the work, as they had of course done in regard to the cost of premiums on liability and performance bonds required in connection with the execution of these contracts. At any rate, it should be said for the Chairman of the State Tax Commission that after this court held on January 29, 1940, in the case of Compress of Union v. Stone, Chairman, 188 Miss. 49, 193 So. 329, citing as authority for its views the

new trend of the most recent decisions of the Supreme Court of the United States as to the constitutionality of such a tax, that the provision of the statute in question had the effect of exempting from the tax only the gross income derived from sales to the United States Government, or to the State of Mississippi, and not the "gross income from the business," as it had been previously construed by the Commissioner, he proceeded to obtain a letter from the Attorney General thus interpreting this decision, and then issued a memorandum to all persons affected thereby, dated March 18, 1940, reading as follows: "Heretofore, it has been held that all income received from the United States Government and the State of Mississippi, its departments and institutions, was exempt. Now, as a result of the Supreme Court's decision and the opinion of the Attorney-General, persons liable for any taxes levied by the Sales Tax Law, except those selling tangible property, may no longer be permitted an exemption on account of income received from the United States Government and the State of Mississippi, its departments and institutions." Also, that he advised the State Tax Collector, when declining to make the back-assessment, that "It has been the consistent policy of this department, certainly since 1932, in the collection of taxes, not to give retroactive effect to new court decisions, or to new opinions of the Attorney-General, any more than to new laws. We have held that insofar as this office was concerned, we would regard such decisions and rulings precisely as we would regard new legislative enactments, and would proceed to collect taxes in conformity with such decisions and rulings, but with reference to future liability alone."

Whether the position above set forth is sound from a legal standpoint, or announces the correct policy that should have been pursued under the circumstances, is not for us to now decide. The precise and only question presented for decision on this appeal is whether the State Tax Collector has any right or authority under the law

to file or maintain this suit, or whether such right, so far as he is concerned, is vested exclusively in the Chairman of the State Tax Commission. We have set forth the status of the amended pleadings for the reason that they allege the failure and refusal of the Tax Commission Chairman and Attorney-General to act in the premises, as an additional ground to that stated in the original declaration to entitle the plaintiff to sue; and we have done so as a premise for saying that neither the good faith of these officials in that behalf can defeat the right of the State Tax Collector to maintain the suit, if he is authorized by law to do so, nor can any lack of good faith—and none such is alleged—create such a right if the lawmaking body has in its wisdom seen fit to withhold the power.

The alleged right of the State Tax Collector to file and maintain the suit was challenged in the trial court by demurrer, and the same having been overruled the defendant declined to plead further, with the result that a final judgment was entered for the amount sued for.

The question presented to us is one of statutory construction. It therefore becomes important to review in a general way the history of the legislation dealing with the power of the State Tax Collector, and to say in passing that prior to the year 1924, the powers of his predecessor in office, the state revenue agent, to institute suits had been constantly enlarged through the years until finally there was a pronounced reversal of this policy, well known to everyone whether in sympathy with the action or not, and this change in the trend of legislation resulted in the abatement of certain pending suits, abolishment of that office and the creation of the office of State Tax Collector, Chapter 286, Laws of 1926, marked by a curtailment of powers, notable among which restrictions was the denial by that act of his right to sue to collect income and inheritance taxes, which was reaffirmed in Chapter 71, Laws of the Extraordinary Session of 1928, also revoking other powers assumed to have

been theretofore granted. These statutes were brought forward in Chapter 168, Code of 1930, and Section 6986 thereof, defining the powers of the State Tax Collector, excluded also the right to sue for penalties for the violation of the anti-trust laws, it being provided therein, among other things, that: "He shall have power and it shall be his duty to proceed by suit in the proper court against all persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatever, whether of the state, county, municipality, drainage, levee or other taxing district, or any sub-division thereof, and for all past due obligations and indebtedness of any character due and owing to them or any of them, except penalties for the violation of the anti-trust laws and except income and inheritance taxes." When these exceptions to his right to sue were first enacted, especially the one as to income and inheritance taxes, the administration of which had been placed under the jurisdiction of the Chairman of the State Tax Commission, a sales tax was wholly unknown as a part of the tax system of this state. It is significant to note, however, that the first time the legislature dealt with the powers of the State Tax Collector, as successor to the state revenue agent, after the income and inheritance laws were passed, it excluded the right of that official to sue for those taxes.

It is also important to trace the history of the "Sales Tax Law" itself, the first of which is Chapter 90, Laws of 1930, Section 16 of which provided that the administration of the law was vested in and should be exercised by the Tax Commission, except as otherwise therein provided, and that the enforcement of any of the provisions thereof in any of the courts of the state "shall be under the exclusive jurisdiction of the Tax Commission . . ." House Concurrent Resolution 65, appearing at page 161 of the Code of 1930, whereby the Code of 1930 was adopted, was construed by this court in the case of Hunt v. Hunt, 172 Miss. 732, 161 So. 119, to mean that the

statutes passed at the 1930 session of the legislature should supercede any of the provisions of the Code adopted at that session, if in conflict therewith. But, aside from that judicial construction of the legislative intent and purpose, it is also true that where there is a special statute dealing particularly and specifically with a part of the subject matter embraced within a general statute, the special statute will ordinarily be regarded as an exception or qualification engrafted upon the general statute to the extent that the latter is in conflict or in apparent conflict with the former. White v. Lowry, Insurance Commissioner, 162 Miss. 751, 139 So. 874; Greaves v. Hinds County, 166 Miss. 89, 145 So. 900; Gully v. Lumbermen's Mutual Cas. Company, 176 Miss. 388, 166 So. 541, 168 So. 609.

Applying the above rule of construction, it would seem clear that the provision of Section 16, Chapter 90, Laws of 1930, supra, whereby the administration of the Sales Tax Law was vested in the Tax Commission and the enforcement of any of the provisions thereof in any of the courts of the state was required to be under its exclusive jurisdiction, would take precedence over the general statute, Section 6986 of the Code of 1930, supra, which defines the powers and limits the authority of the State Tax Collector to sue for past-due taxes. Most assuredly, a codifier of the statutes would not have hesitated to include the sales tax, along with income and inheritance taxes and penalties for the violation of the anti-trust laws, in the exception contained in Section 6986, supra, as to the right of the State Tax Collector to sue, if he had been codifying that statute subsequent to the passage of the Sales Tax Law embodied in said Chapter 90, Laws of 1930. Furthermore, the rule is well established that "where a statute creates a new right and also provides a remedy for its enforcement, it is ordinarily held that such remedy is exclusive." 1 C. J. 989. See, also, 1 C. J. S., Actions, section 6, page 974, where it is said:

"Where a code or statute creates a new right or liability that did not exist at common law or under prior statutes, and also provides a specific remedy for the enforcement thereof, as a general rule such statutory remedy is exclusive, particularly when it is so denominated by the terms of the statute."

Much reliance is also placed by the State Tax Collector upon Section 3122 of the Code of 1930, which makes every lawful tax a debt recoverable by action, it being contended that this statute, when construed in connection with Section 6986 of said Code, grants unto him the power and makes it his duty to proceed by suit to collect the past-due and unpaid taxes here in question; but, it is to be observed that since Section 3122, supra, is a general statute, the same rule of construction hereinbefore stated is to be applied so as to give precedence to the special statute, Chapter 90, Laws of 1930, which also characterizes a past-due tax thereunder as a debt recoverable by action, and provides that the administration of the act and the enforcement of its provision in any of the courts of the state shall be under the exclusive jurisdiction of the Tax Commission. Moreover, the general statute, Section 3122, supra, upon which the State Tax Collector relies in part for his right to sue in this case, provides, by its express terms, that income and inheritance taxes are included among those made a debt recoverable by action, and they are then expressly excepted in Section 6986 of the Code, supra, defining the powers of the State Tax Collector to sue for past-due taxes. It will therefore be readily seen that the fact that the tax sued for in the case at bar is made a debt recoverable by action under the terms of the statutes by which it is imposed is not of itself determinative of the right of the State Tax Collector to sue.

The special statute above referred to, being the so-called "Sales Tax Act" of 1930, which became a law without the approval of the Governor, produced only about a quarter of a million dollars additional revenue

per annum, according to matters of general information pertaining to the history of our present revenue system; and was wholly inadequate to solve the recurring financial problems of the state. To take care of a then existing deficit of several million dollars, it became necessary for the legislature of 1932 to lower the exemptions and increase the rates formerly provided for, and to either find something else to tax or devise various ways and means of taxing the same things. Thereupon, there was enacted Chapter 90, as amended by Chapter 91, Laws of 1932, known as the ''Emergency Revenue Act of 1932,'' in order to bring economic order out of financial chaos. This legislation was able to weather the storm of a state-wide protest, as an emergency measure to expire on June 30, 1934, because it was recognized that something had to be done to meet outstanding and past-due obligations and save the credit of the state, even though such legislation was then considered to be objectionable in principle. Can it be doubted that the bringing forward of Section 16 of the former act so as to vest the administration of the proposed sales tax law in the Chairman of the State Tax Commission, which was theretofore vested in the Tax Commission as a whole, and giving to him the exclusive jurisdiction of the enforcement of any of its provisions in any of the courts of the state, was a most potent influence in inducing the legislature to enact this law? Or, can it be said that when the right was granted to the Commissioner, his agents and representatives, and to them alone, to examine, if need be, the books, records, and papers of the taxpayer so as to obtain the necessary data for the assessment of the tax, and for the enforcement of its collection in the courts, it was ever intended that the State Tax Collector, not clothed with such power or possessed of the information that such an examination would disclose, should be allowed to overrule the judgment of the Commissioner as to whether the assessment should be made or a suit brought against the taxpayer? To state it differently, would this law, which passed by

an extremely narrow margin, and the success of which, as an experiment in revenue legislation, necessarily depended upon its administration in such a manner as to secure the cooperation of the taxpayer, ever have been enacted at all had not the responsibility for its enforcement been placed under the exclusive jurisdiction of the official charged with that duty? Chapter 168, Code of 1930, defining the powers of the State Tax Collector, and giving him the right only to investigate the books, accounts and vouchers of all fiscal officers and depositories of the state, and of every county, municipality and levee board and taxing districts of every kind, and to examine the records, minutes and allowances of the various boards of supervisors, mayor and aldermen of municipalities, drainage boards and all other boards in power to make allowances of public money under the laws of the state, was not amended so as to enlarge those powers when the Emergency Revenue Act of 1932 was passed; and great as was the need that all taxes then levied by the act should be collected, we find that nowhere in this Sales Tax Law of 1932, as amended by Chapter 119, Laws of 1934, and as further amended by Chapter 158, Laws of 1936, and Chapter 113, Laws of 1938, is there any provision giving to the State Tax Collector any power pertaining to an examination of the books, records and papers of the taxpayer, whether a firm, corporation or private individual, or imposing upon him any duty to perform as to the collection of any tax provided for by these statutes. It is manifest that the legislature, in withholding from the then State Tax Collector, and from his successors in office, operating on a commission basis, the power to examine the books, records and papers of the taxpayer for the purpose of ascertaining whether or not there might be some foundation for the institution of a contemplated suit to collect a sales tax, intended that he should have nothing to do with the collection thereof by suit or otherwise, nor that he should be vested with any power to disturb the orderly processes of the State Tax Commission

in its administration of the law for the assessment and collection of the taxes imposed by the Sales Tax Law.

But it is said, as we understand the position of the State Tax Collector, that it is not essential that he should have been given the right to examine the books, records and papers of the taxpayers, in advance of filing suit, in order that he might be able to enforce the provisions of the Sales Tax Act in the courts; that the taxpayer may have his hearing in the court when sued, citing the case of Nickey v. State, 167 Miss. 650, 145 So. 630, 146 So. 859, 147 So. 324, involving the question of whether a taxpayer was entitled to notice and an opportunity to be heard at a meeting of the board of supervisors fixing the value of his property as a basis of taxation, and wherein the court held that when he is summoned to court by process personally served, he is permitted to be heard to rebut, if he can, the prima facie correctness of the assessment levied against him. While this method may be deemed the appropriate remedy for obtaining the facts in suits which the State Tax Collector is authorized by law to bring, it could not have been within the contemplation of the legislature so far as the administration of the Sales Tax Laws are concerned when it gave the Chairman of the State Tax Commission the authority to examine the books, records and papers of the taxpayer for the purpose of ascertaining in advance whether a tax is justly due and owing by him, before he is required to defend a lawsuit brought on behalf of the state to enforce its collection.

But in order to settle the matter of who should act in the premises, and to preclude the contention that some other officer could intervene, Section 16 of the Sales Tax Law of 1932 was enacted to read as follows:

"The administration of this Act is vested in and shall be exercised by the Chairman of the State Tax Commission, except as otherwise herein provided, and the enforcement of any of the provisions of this Act in any of the courts of the State shall be under the exclusive

jurisdiction of the Chairman of the State Tax Commission who may require the assistance of and act through the prosecuting attorney of any county, or any district attorney, or any attorney for the Commission, and may with the assent of the Governor, employ special counsel in any county to aid the prosecuting attorney, the compensation of whom shall be. fixed by and paid only upon the approval of the Governor; but the district attorney or prosecuting attorney of any county shall receive no fees or compensation for services rendered in enforcing this Act in addition to the salary paid to such officer. The Chairman of the State Tax Commission shall appoint, as needed, such agents, clerks and stenographers as authorized by law, who shall serve under him, shall perform such duties as may be required, not inconsistent with this Act, and are hereby authorized to act for the Commissioner as he may prescribe and as provided herein. Each such agent shall execute a bond in the sum of Five Thousand dollars ($5,000.00) for the faithful discharge of his duties. All of such agents, clerks and stenographers may be removed by the Chairman of the State Tax Commission for cause of which the Commissioner shall be final judge.

"In case of violation of the provisions of this Act the Commissioner may decline to prosecute for the first offense, if in his judgment such violation is not wilful or flagrant."

This section was amended by Chapter 91, Laws of 1932, so as to include the attorney for the Commission in the provisions of Section 16, and later by Chapter 119, Laws of 1934, as re-enacted by Chapter 158, Laws of 1936, and Chapter 113, Laws of 1938, so as to include the Attorney-General among those mentioned in said Section 16 upon whom the Chairman of the State Tax Commission might call for legal services in the enforcement of any of the provisions of the act in any of the courts of the state, as had been done by Section 10 of the Acts of 1932, which required that he represent the state in all litigation growing out of the provisions of the act, and so that Section

16 would provide as theretofore that these officials so called upon to render such legal services should receive no fees or compensation in addition to the salaries paid to such officers. In other words, it was the evident purpose of the legislature that these emergency taxes should go into the state treasury to meet the crisis then impending, and without any deductions of a 20% commission for the collection thereof. This determination on the part of the legislature, pervading as it does the entire act, is too prominent to be ignored, and in our opinion is too plain to admit of doubt. This Section 16 in the Sales Tax Law of 1932, as amended, is found enacted in its exact language as Section 17, Chapter 114, Laws of 1938; imposing a tax known as the "Use Tax," upon the privilege of using within this state any article of tangible personal property purchased at retail, produced or manufactured outside of the state. It will therefore be seen that the legislature has from time to time dealt with the requirement that "the enforcement of any of the provisions of this act in any of the courts of the state shall be under the exclusive jurisdiction of the chairman of the state tax commission," and if the language failed in the first instance to express the real legislative intent, then the lawmakers have been derelict in not changing and limiting the verbiage so as to express the meaning intended.

In view of the rule that in the interpretation of statutes, words in common use are to be construed in their natural, plain and ordinary signification, it is unnecessary that we cite previous court decisions or quote the definitions given by the lexicographers to show that the words "exclusive jurisdiction" precludes the idea of co-existence; or that in the ordinary speech of the people, it means possessed to the exclusion of others.

It is urged, however, that this section of the Sales Tax Law was intended to apply only to prosecutions in the criminal courts. But, it will be noted that the enforcement of any of the provisions of the act in *any* of the

courts of the state (including courts of chancery where no criminal prosecutions are conducted) is placed under the exclusive jurisdiction of the Chairman of the State Tax Commission. Moreover, if the interpretation contended for by the State Tax Collector should be adopted, we would have the wholly superfluous provision that "the attorney general, district attorney or prosecuting attorney of any county shall receive no fees or compensation for services rendered in enforcing this act in addition to the salary paid to such officer," since we cannot ascribe to the legislature the thought that any of these officers would assume to charge extra compensation for their services in the prosecution of criminal cases for which they are paid an annual salary fixed by law.

Even though it be said that under the decision in Capitol Stages Co., Inc., et al. v. State ex rel. Hewitt, Dist. Atty., 157 Miss. 576, 128 So. 759, a district or county attorney cannot act to the exclusion of the Attorney-General, and of his own independent volition, in a matter of state-wide public interest, this would not defeat the exclusive jurisdiction of the Commissioner to enforce the provisions of the statute in question in any of the courts, acting through such officers within the proper spheres of their authority, respectively, in their territorial jurisdiction.

It is also contended that Section 11 of Chapter 119, Laws of 1934, as amended, gives the State Tax Collector the right to sue, because it provides that the tax due and unpaid under the provisions of the act shall constitute a debt due the state; that it shall constitute a lien upon the property of the taxpayer; that the same may be collected by an action in debt, or other appropriate judicial proceedings; and that these remedies are in addition to all other existing remedies. We deem it sufficient to say in answer to that contention that it is also true that the income tax law, Chapter 124, Code of 1930, makes the income tax a personal debt of the taxpayer, recoverable by an action brought by the Attorney General

of the state, at the instance of the Commissioner, and makes the tax a lien upon his property, since the Commissioner is authorized to issue a warrant directed to the sheriff of any county of the state commanding him to levy upon and sell the real and personal property of the taxpayer for the payment of the same; and that it is also the duty of the Attorney-General under Section 3673, Code of 1930, as under Section 16 of the act in question, to institute or defend any suit arising out of any act or order of the Tax Commission affecting the laws and revenues of the state, he being clothed by such statute with all such authority as is conferred upon such officer at common law. Likewise, the inheritance tax law, Chapter 125 of the Code of 1930, makes an executor, administrator, and others whose duty it is to pay inheritance taxes, liable for the tax imposed, recoverable by action brought by the Attorney-General of the state, any district attorney or county attorney, at the instance of the Commissioner, and makes the tax a lien for three years upon the gross estate of the decedent. Nevertheless, these income and inheritance taxes are expressly excluded, as hereinbefore shown, from the right of the State Tax Collector to sue. How then can it be said that these features of the Sales Tax Law indicate an intention of the legislature to grant unto the State Tax Collector the right to sue when it is seen that they appear in other statutes imposing taxes, and for the collection of which he is denied the right to sue?

As to the provision contained in said Section 11 of said Chapter 119, Laws of 1934, as amended, to the effect that the remedies for the collection of the tax "shall be in addition to all other existing remedies," we are of the opinion that the other existing remedies referred to are those contained in Chapter 90 of the Laws of 1932, whereby the Commissioner was given authority to issue a warrant under certain circumstances directing the sheriff to enforce the collection of the sales tax therein provided for, etc.

Then, it is said that Section 14 of said Chapter 119, Laws of 1934, supra, discloses an intention on the part of the legislature to permit the State Tax Collector to bring a suit for the enforcement of the provisions of the act for the reason that it prevents the members of the State Tax Commission, its agents, clerks or stenographers, from divulging the gross income, gross proceeds of sales, or the amount of tax paid by any person, except to members and employees of the State Tax Commission and the income tax department thereof for the purpose of checking, comparing and correcting returns, or to the Governor or to the Attorney General, or any other legal representative of the state in any action in respect to the amount of tax due under the provisions of the act, it being contended that the words ''or any other legal representative of the state'' can have reference to no other person than the State Tax Collector. In determining what is meant by the reference above quoted, it must be kept in mind that the statute elsewhere provides that the Chairman of the State Tax Commission may require the assistance of and act through not only the Attorney General, but the prosecuting attorney of any county, or any district attorney, or any attorney for the Commission, or any special counsel employed by the Commissioner with the assent of the Governor, and that the attorneys above mentioned are the only legal representatives mentioned in the act through which the Commissioner is authorized to proceed to enforce the provisions of the act in any of the courts of the state. Moreover, the clause ''or other legal representatives'' is found immediately following the words ''attorney general,'' in both the income and inheritance tax statutes, Chapters 124 and 125 of the Code, respectively, requiring the same secrecy above referred to, and which prohibit the divulging of information obtained by the Commission, except that the same is to be subject to the inspection of the Attorney-General ''or other legal representatives of the state,'' and most assuredly the State Tax Collector is not the ''other legal

representative of the state'' referred to in the income and inheritance laws, since he has no duties to perform or powers to exercise in regard thereto.

Finally, it is urged in support of the State Tax Collector's alleged right to sue that the sales tax statutes should not be so construed as to leave it to the will and discretion of one man—the Chairman of the State Tax Commission—as to whether or not a tax levied thereunder shall be collected; that the granting of such power could never have been intended by the legislature. The same argument may be applied, however, to the enforcement of the income and inheritance tax laws, involving as they do large sums of revenue due to the state each year, and yet the legislature has expressly declared by repeated statutory enactments that these taxes are excepted from those for which the State Tax Collector may sue as hereinbefore shown. Moreover, the administration of most all of the other new forms of taxes that have been imposed during recent years has been placed under his jurisdiction, until the collections made by the Tax Commission for the fiscal year ending June 30, 1940, reached the sum of approximately $13,300,000 according to a published official statement from the State Auditor's office appearing in the public press of a few days ago, and which may suggest that very likely the legislature may not have acted unwisely in placing the responsibility of the enforcement of these laws under the exclusive jurisdiction of the chairman of that department.

Responding further to the contention that the legislature could never have intended for the state to have been left without a remedy in the event the Chairman of the State Tax Commission should arbitrarily refuse to assess and collect any tax due under the Sales Tax Laws, or for any other reason failed to do so, it may be observed that the Attorney-General would have the right to bring a suit to enforce the payment of the tax in question, if in his judgment the public interest should so require, since he is a constitutional officer possessed of all the power and

authority vested in such an official at common law, and, in addition, such as have been conferred on him by statute, including the right "to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights." Capitol Stages Co., Inc., v. State ex rel., supra [157 Miss. 576, 128 So. 763], and 2 R. C. L., Secs. 4 and 5, Pages 915-17. This right is not confined to the enforcement of the criminal laws, but applies also to all matters of state-wide public interest in any of the courts of the state. As to whether the legislature could, within constitutional bounds, vest in the Chairman of the State Tax Commission the exclusive jurisdiction in regard to the enforcement of any of the provisions of the Sales Tax Laws in any of the courts of the state to the exclusion of the Attorney General is not here involved, and it is therefore unnecessary that we decide that question in this case. Suffice it to say, it did have the authority to vest such jurisdiction in the Chairman of the State Tax Commission to the exclusion of any other official authorized by law to bring suits to collect past-due and unpaid taxes whose authority is derived solely from statutory enactment, as distinguished from that conferred by the Constitution itself.

On account of the fact that the precise question here involved is presented to the court for the first time by this appeal, we have endeavored to give the case that consideration which we think its importance demands; and we are clearly of the opinion that the demurrer to the amended declaration of the State Tax Collector should have been sustained and the suit dismissed.

Reversed, and judgment here for the appellant.

SPECIALLY CONCURRING OPINION.

**Anderson, J.,** delivered a specially concurring opinion.

I concur in the majority opinion dismissing this suit but upon a different ground from that stated therein. Under the Constitution the legislature was without pow-

er to confer on any officer of the state other than the Attorney-General the exclusive authority to bring this character of suit on behalf of the state. Perhaps the legislature could confer such power on another officer to be exercised in conjunction with and under the supervision and control of the Attorney-General.

The office of Attorney-General is a constitutional office in this state. Section 173 is in this language: "There shall be an attorney-general elected at the same time and in the same manner as the governor is elected, whose term of office shall be four years and whose compensation shall be fixed by law. The qualifications for the attorney-general shall be the same as herein prescribed for judges of the circuit and chancery courts."

It will be observed that the Constitution prescribed the qualifications of the Attorney General but not his duties and powers. The office of Attorney-General was a common-law office. The creation of the office therefore by the Constitution without prescribing his powers, by implication adopted his common-law powers, none of which can be taken away from him by the legislature. State v. Key, 93 Miss. 115, 46 So. 75; Capitol Stages, Inc. v. State ex rel. Hewitt, Dist. Atty., 157 Miss. 576, 128 So. 759, 763. The latter was a suit by a district attorney on behalf of the state involving a matter of state-wide interest. It was an action on behalf of the general public therefore. The statute authorized the district attorney to bring the suit. The court held that the Attorney-General alone had the right to bring the suit under the common-law powers which were conferred along with the adoption of Section 173 of the Constitution, and therefore the statute authorizing the district attorney to bring it was unconstitutional. The court in its opinion quoted with approval the following from 2 R. C. L., Secs. 4 and 5, pages 915-917: " 'At common law the duties of the Attorney-General, as chief law officer of the realm were very numerous and varied. He was the chief legal adviser of the crown, and was entrusted with the manage-

ment of all legal affairs, and the prosecution of all suits, civil and criminal, in which the crown was interested.' He had authority to institute proceedings to abate public nuisances affecting and endangering public safety and convenience; he had the power to control and manage all litigation on behalf of the state; he could intervene in all actions which were of concern to the general public, including the right to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights.''

Undoubtedly a suit of this character involves a matter of state-wide interest. It is an action on behalf of all the public. It is therefore one which the attorney general alone has the right to control. It may be that under the Constitution the legislature would have the power to confer the right upon some other state officer with the consent and under the supervision and control of the Attorney-General. The exclusive right, however, could not be conferred elsewhere.

However, these principles of constitutional law have no application to public suits where only local interests are involved, as distinguished from state-wide interests. The power to bring such suits may be and has been to a large extent, conferred on district attorneys and county attorneys, and might be extended by legislative act to other officers. The common-law powers of the Attorney-General did not include such suits. This is not true, however, as to suits of this character involving state-wide interest. All such suits under the Constitution must be brought either by the Attorney General or by some officer in conjunction with him, and under his supervision and control; and this of course includes both the State Tax Collector and the Chairman of the State Tax Commission. The result would be (and it appears that such a result is very desirable) that there would be a constitutional governing state officer in control of all such litiga-

tion. That would be the end of conflicting authority with reference to the subject.

ON SUGGESTION OF ERROR.

**Smith, C. J.**, delivered the opinion of the court on suggestion of error.

I concur in overruling this suggestion of error. The sole question in the case is whether or not Section 16, Chapter 113, Laws of 1938, withdraws from the appellee the right to bring this suit. Whether it also withdraws such right from the Attorney-General is not before the court, and any opinion expressed thereon is mere dictum not binding on any one. A conflict appears in the decisions of this Court as to the right of the legislature, under Section 103 of the Constitution, to define the powers of the Attorney-General so as to deprive him of any power he might have at common law, which conflict can be resolved only in a case where this right vel non of the legislature is necessarily involved. I, therefore, express no opinion of the effect of this statute on the right of the Attorney General to institute legal proceedings authorized by it.