Charlie F. WADE et al., Plaintiffs,

and

United States of America et al.,
Plaintiff-Intervenors,

v.

MISSISSIPPI COOPERATIVE EXTEN-
SION SERVICE et al.,
Defendants.

No. EC 70–29–K.

United States District Court,
N. D. Mississippi, E. D.

April 17, 1975.

230

Frank R. Parker, Jackson, Miss., Kent Jonas, Dept. of Justice, Washington, D. C., for plaintiffs.

A. F. Summer, Atty. Gen., Jackson, Miss., Fred B. Smith, Ripley, Miss., for defendants.

M. M. Roberts, Hattiesburg, Miss., for Board of Trustees of Institutions of Higher Learning.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Today we are called upon to decide a delicate but highly significant question of state law—whether in a case of undeniable statewide interest the Attorney General of the State of Mississippi has authority to assume defense of an action against the Board of Trustees of State Institutions of Higher Learning (the Board), an autonomous and constitutional state agency which wishes instead to retain private counsel to represent its official interests.

This case began several years ago as a class action to eliminate racial discrimination and segregation in the employment and promotion practices of the Mississippi Cooperative Extension Service (MCES), a statewide agricultural agency, and in the services and activities MCES provides to the citizens of Mississippi. The Board, having supervisory authority over MCES, was joined as a party defendant. Certain claims raised by plaintiffs against the Board relating to racial segregation in the State's two land-grant colleges Mississippi State University and Alcorn A & M College (now Alcorn State University), were deferred to a future date. After protracted litigation in which the United States participated as plaintiff-intervenor, this court on February 15, 1974, found that impermissible racial discrimination had occurred within MCES and issued a comprehensive decree designed to rectify past and continuing racially discriminatory practices.[1]

Without seeking supersedeas from this court or the Court of Appeals, defendants appealed this ruling to the Fifth Circuit, where the case still pends.

Without a stay, implementation of our judgment proceeded apace and, by January 1975, was for the most part either effected or in process of being complied with. On January 20, 1975, however, the United States, as plaintiff-intervenor, filed a motion to amend and supplement its complaint in intervention, which would have expanded this action as originally brought into a mammoth racial discrimination suit against the Board and the entire Mississippi university and senior and junior college system. Shortly thereafter, a separate action, Ayers v. Waller, No. GC 75–9–K, was commenced in this court by other citizens as private plaintiffs seeking injunctive and declaratory relief on allegations closely paralleling those of plaintiff-intervenor's amended and supplemental complaint in the case sub judice.

At this juncture, Honorable A. F. Summer, Attorney General of Mississippi, advised the court and the Board by letter of February 20, 1975, that because of the statewide significance of these actions he was exercising the authority vested in him by Miss.Code Ann., § 7–5–1 (1972)[2] to assume control of the defense of both suits for the Board and other state institutions and agencies sought to be added as defendants.

Nevertheless, the Board retained private counsel, Honorable M. M. Roberts of Hattiesburg, himself a past member and former Board president. When Attorney Roberts filed briefs in opposition to plaintiff-intervenor's motion, the Attorney General moved to strike from that submission any reference that Mr. Roberts represents the Board in any capacity other than as attorney for the Board members as individuals.

 Oral argument on the Attorney General's motion to strike has been

---

1. Wade v. Miss. Cooperative Extension Service, 372 F.Supp. 126 (N.D.Miss.1974).

2. The statute provides, in relevant part:

 The attorney general . . . shall be the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state. No arm or agency of the state government shall bring or defend a suit against another such arm or agency without prior written approval of the attorney general. He shall have the powers of the attorney general at common law and is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest.

heard,[3] supplemental briefs submitted, and the issue is squarely joined and ripe for decision. Our jurisdiction over this state-law matter is pendent, if not incidental, to the important federal questions here involved; we exercise our discretion to decide it because adjudication thereon is necessary to further orderly proceedings of the Board before this federal district court.

## I.

The Attorney General of Mississippi is a constitutional officer ordained by the State's original charter of 1817 and continued in every state constitution since.[4] Although § 173, the provision of Mississippi's present constitution which establishes the office, is facially silent as to its powers and duties,[5] specific legislative authorization for the power now claimed by the Attorney General is not wanting. Indeed, statutory designation of the Attorney General as legal counsel for the State in all civil cases stretches forward in unbroken succession since territorial times.[6] If the present statutory language of § 7–5–1, granting the Attorney General "the powers of the attorney general at common law and . . . the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest," were the sole guide, it would be clear that the Attorney General is empowered to defend the Board against the comprehensive complaint of racial discrimination in the operation of the State's educational institutions under its charge. The authority of the Attorney General to act on behalf of the Board, however, is more than statutory; it is of constitutional dimension.

Though § 173 makes no delineation of the nature and scope of the Attorney General's power, the Supreme Court of Mississippi has consistently ruled that the constitutional creation of the office, even without further statutory enactment, vested in the Attorney General all powers which that officer possessed at common law and incorporated that common-law authority into the constitution itself.

> The duties of the Attorney General were not prescribed by the Constitution, nor did it provide that they would necessarily have to be prescribed by the legislature. They existed at common law . . . . The creation of the office of Attorney General by the Constitution vested him with these common law duties, which he had previously exercised as chief law officer of the realm. Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So.2d 483, 486 (Miss.1944).

See also Gandy v. Reserve Life Ins. Co., 279 So.2d 648, 649 (Miss.1973); State v. Warren, 254 Miss. 293, 180 So.2d 293, 299 (1965); Dunn Const. Co. v. Craig, 191 Miss. 682, 2 So.2d 166, 174–75

---

3. The motion to amend and supplement the complaint in intervention was denied by the court in a bench ruling of March 12, 1975. The United States was, however, directed to intervene in the nascent Ayers litigation and did so on April 7. Although our denial of plaintiff-intervenor's motion, to which the challenged Roberts' brief was specifically addressed, might seem to moot the Attorney General's motion to strike the continuing Ayers litigation makes inevitable a repetition of this dispute. Moreover, the Wade litigation as to MCES is not yet concluded, and it is foreseeable that the Board will continue to appear through Mr. Roberts or other private counsel over the objection of the Attorney General.

4. Miss.Const. Art. V, § 14 (1817); Miss. Const. Art. IV, § 25 (1832); Miss.Const. Art. VI, § 25 (1868).

5. There shall be an attorney-general elected at the same time and in the same manner as the governor is elected, whose term of office shall be four years and whose compensation shall be fixed by law. The qualifications for the attorney-general shall be the same as herein provided for judges of the circuit and chancery courts. Miss.Const. Art. 6, § 173 (1890).

6. See, e. g., Statutes of the Mississippi Territory (Revised, 1807) at 230; Revised Statutes of 1832, Ch. XXI, § 1; Miss.Code § 190 (1892); Miss.Code Ann. § 3655 (1930); Miss.Code Ann. § 3826 (1942).

(1941); Capitol Stages v. State, 157 Miss. 576, 128 So. 759, 763 (1930).

 As defined by the State's highest court, this common-law power, elevated to constitutional stature, is wide-ranging and encompasses the prerogative of the Attorney General to assume control of the Board's defense in the present litigation.

'At common law the duties of the Attorney General, as chief law officer of the realm were very numerous and varied. He was the chief legal adviser of the crown, and was entrusted with the management of all legal affairs, and the prosecution of all suits, civil and criminal, in which the crown was interested.' He had authority to institute proceedings to abate public nuisances affecting and endangering public safety and convenience; he had the power to control and manage all litigation on behalf of the state; he could intervene in all actions which were of concern to the general public, including the right to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights. Capitol Stages, supra, at 763.

Thus both constitutionally and by legislative enactment Mississippi's Attorney General is granted plenary authority, as the State's chief legal officer, to defend the Board in this lawsuit of undoubted statewide significance, irrespective of the Board's wishes to proceed through counsel of its own choice.

## II.

 Against this imposing array of authority, the Board musters several unconvincing arguments. It is first contended that § 7-5-1 is unconstitutional because it grants to the Attorney General the absolute power to decide which cases are of statewide interest without ascertainable standards by which such determination is to be made. On the contrary, the Mississippi decisions have reviewed the Attorney General's assertion that a case meets the statewide interest test and have applied judicially ascertainable standards in so doing. State v. Warren, supra, 180 So. 2d at 300; Capitol Stages, supra, 128 So. at 764. Moreover, the courts of Mississippi have directly examined the statewide interest standard and not found it to be unenforceable or lacking in clarity. See Kennington-Saenger Theatres, supra. We hold that § 7-5-1 is not unconstitutional for lack of standards, nor does the statute invest in the Attorney General arbitrary power too vague or unreviewable by courts to survive constitutional scrutiny. In the case sub judice, the issues raised by the complaints of the private plaintiffs and the United States are of general, statewide public interest and concern, wholly devoid of local or private connotation. Indeed, it would be difficult to conceive of litigation which more greatly affects the State and its institutions.

 Moreover, the Board's argument must fail since the statewide interest standard is itself a constitutional and not a legislative test. The statutory grant of power which the Board assails was first enacted by the legislature in 1970.[7] Nevertheless, forty years earlier, in a case involving the division of powers between the Attorney General and district attorneys, the Supreme Court of Mississippi construed the constitutional and common-law authority of the Attorney General to mean that "[a]s to all litigation, the subject-matter of which is of state-wide interest, the Attorney General alone has the right to represent the state." Capitol Stages, supra, 128 So. at 764; Kennington-Saenger Theatres, supra. In giving the Attorney General sole power to defend state agencies in cases of statewide interest, the legislature, in 1970, added nothing to the inherent power of the office; its enactment was merely declaratory of the constitutional power as construed by the state's highest court. Thus, the present

---

7. Laws of Mississippi, 1970, Ch. 348, § 1.

challenge to the constitutionality of § 7–5–1 is foreclosed.

The Board next argues that even if Mississippi law does vest in the Attorney General the authority and responsibility for which he now contends, defaults on his legal obligations in other recent court cases now estop him from pressing his claims before us. Specifically, the Board asserts that it has on numerous occasions engaged private counsel without the prior approval or knowledge of the Attorney General; also, that in some instances, the Attorney General has failed to provide legal assistance to the Board although specific request therefor was made by the Board.

■ We do not regard it necessary for this court to delve into the controversial, if not petty, exchanges between the parties, for it is clear that regardless of whether the Attorney General may have in any manner defaulted on his constitutional and statutory responsibilities—a finding we do not make—he cannot now be barred from asserting or reasserting any power which has been specifically bestowed upon his office by the citizenry of Mississippi and which is for them alone to withdraw. See Eastman Oil Mills v. State, 130 Miss. 63, 93 So. 484 (1922); Gift v. Love, 164 Miss. 442, 144 So. 562, 566 (Miss.1932); see generally 31 C.J.S. Estoppel §§ 138–140.

■ The Board's final, and most serious, contention is that § 213–A of Mississippi's Constitution, inserted in 1944, created the Board as an autonomous agency entrusted with the management and control of Mississippi's senior colleges and universities, and thus invested the Board with the power to employ legal counsel in all cases to which it is a party, independently of the Attorney General. Mississippi has no judicial precedents interpreting the scope of § 213–A or the statutes passed thereunder.

Hence, this case is one of first impression. Since § 213–A nowhere expressly grants to the Board authority to engage counsel for the purpose of conducting litigation of state-wide interest, the Board's assertion that § 213–A bestows such authority can only be based upon a claim that § 213–A impliedly effects a pro tanto repeal of the plenary authority conferred on the Attorney General by § 173 to represent the State in all litigation of such character. This contention is bottomed upon the proposition that the Board has inherent power as a constitutionally-created autonomous entity, particularly in view of certain language found in Miss.Code Ann. § 37–101–7 (1972):

> The board shall also have the authority to employ on a fee basis such technical and professional assistance as may be necessary to carry out the powers, duties and purposes of the board.

It is easily perceptible that even if the foregoing statute purports to give the Board authority to retain private legal counsel as professional advisors, no statutory enactment can override the well-established constitutional authority of the Attorney General in this area of strong State concern.

■ But we do not read either § 37–101–7 or § 213–A of the State's constitution as conferring such authority upon the Board. Mississippi jurisprudence places high priority on harmonizing, wherever possible, separate constitutional provisions so as to give effect to all; and repeal of a specific constitutional provision by implication is never favored. State v. Jackson, 119 Miss. 727, 81 So. 1 (1919). The Board's purpose, as prominently expressed in its constitutional charter [8] and complementary legislation, is to manage and control the educational institutions under

---

8. § 213–A provides in relevant part:
Such Board shall have the power and authority to elect the heads of the various institutions of higher learning, and contract with all deans, professors and other members of the teaching staff, and all administrative employees of said institutions for a term not exceeding four years; but said Board shall have the power and authority to terminate any such contract at any time for malfeasance, inefficiency or contumacious conduct, but never for political reasons.

its charge "to the greatest advantage of the people of the State", uninfluenced by political considerations and free of domination by the Chief Executive of the State. The statutory powers and duties of the Board, enumerated at length in Miss.Code Ann. § 37–101–15, are clearly directed toward this concept of the Board as a nonpolitical and independent agency autonomous within its sphere of operations in all fields of higher education. But the autonomy of the Board, and hence its ability to act independently of the Attorney General and other governmental officers, extends only to those highly important functions for which it was created. Just as the Board could not, independently of the legislature, levy and collect taxes for the support of state universities, so too it cannot, without a specific constitutional grant, act in those areas expressly and constitutionally entrusted to the authority of the Attorney General. Proper functioning of the Board as an educational agency is not dependent on its ability to retain private counsel in cases of this sort, which are of state-wide interest. Thus, the power so to act may not be implied from the terms of § 213–A.

We emphasize that this case does not concern the authority which the Board may legally exercise in employing counsel in the discharge of many activities, which may be of a purely local, administrative, or proprietary nature. For example, the Board may need legal assistance in purchasing real estate, collecting debts from others, preparing and reviewing employment contracts with professional staff, and other matters similarly related to the Board's ordinary functions. Whether the Board may engage counsel, independently of the Attorney General's office, to assist in matters of this kind is not presented by this case, and we express no opinion thereon.

But in actions of indisputable state-wide interest, where the Attorney General is specifically empowered to act for state agencies by long-established consti-

tutional doctrine, due regard for Mississippi's Constitution by applying the familiar rule of pari materia interpretation mandates that the Board not be allowed to usurp his constitutional prerogative. See St. Louis & San Francisco R. Co. v. Benton County, 132 Miss. 325, 96 So. 689 (Miss.1923) ; State v. Jackson, supra.

Moreover, in the eventuality of a conflict of interest between state agencies —for example, between the Board and one or more junior colleges or other educational entities joined as defendants in this cause—the Attorney General has given his personal assurance to this court to take whatever steps may be necessary to protect all interests, including compliance with such orders as this court may see fit to enter.

We hold that the Board is without power to engage counsel in this cause to represent its official interests independently, and over the objection of the State's Attorney General, and the Attorney General's motion to strike is hereby sustained.

This ruling will be equally effective in the companion litigation styled Ayers v. Waller, No. GC 75–9–K.