# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01291-SCT

*PURSUE ENERGY CORPORATION*

*v.*

*MISSISSIPPI STATE TAX COMMISSION, ED BUELOW, JR., COMMISSIONER, LISA W. HALL, ASSOCIATE COMMISSIONER OF THE MISSISSIPPI STATE TAX COMMISSION, RUSSELL E. HAWKINS, ASSOCIATE COMMISSIONER OF THE MISSISSIPPI STATE TAX COMMISSION AND MICHAEL C. MOORE, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/1999 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | C. GLEN BUSH |
| | JAMES T. KNIGHT |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WILLIAM F. BLAIR |
| | T. HUNT COLE, JR. |
| | BOBBY R. LONG |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED AND REMANDED - 4/18/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/9/2002 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. Pursue Energy Corporation ("Pursue"), a producer of oil and gas subject to severance taxes in Rankin County, Mississippi, appeals from the judgment of the Chancery Court of Rankin County requiring it to produce documents concerning a pending tax investigation by the Attorney General and the State Tax Commission, on the grounds that appointed special assistant attorneys general act without legal authority in requesting such documents.

## FACTS

¶2. Kent McDaniel[1] and William F. Blair were appointed as special assistant attorneys general in 1996 to assist the Mississippi Tax Commission's investigation into payments made to various oil and gas producing companies around the state. These payments were typically made by oil and gas purchasers, locked into long-term contracts with the oil and gas producers for purchase prices well above the market price of the commodity, in order to modify or rescind the unfavorable contracts. Pursue Energy Corporation ("Pursue"), an oil and gas producer, came under the Tax Commission's investigation in 1996 for possible income and

severance tax obligations related to Pursue's gas contract settlements. In the course of the investigation, Blair sent Pursue a letter requesting documents and information relating to a series of settlements beginning in 1993 and concerning payments greater than $100 million. Pursue resisted the production of the information and filed the present suit, along with The Louisiana Land and Exploration Company and Inexco Oil Company, in the Rankin County Chancery Court to put an end to the special attorneys' general involvement in the investigation. The Louisiana Land and Exploration Company and Inexco Oil settled their suit with the Commission. Pursue now remains as the sole appellant. The major point of contention between the two parties is the retention agreement between the Attorney General and his appointees McDaniel and Blair and the role they play in the investigation.

¶3. The retention agreement between the attorneys and the Attorney General stipulated that they were retained for their special expertise in the area and that compensation would be made under a contingency fee arrangement. The complaint challenged the authority of a private attorney with a financial stake in the amount of tax collected to conduct a tax examination and participate in the assessment and collection of taxes. Pursue filed a motion for summary judgment. The Commission filed a cross-motion for summary judgment, arguing that the Attorney General had the inherent power to assist any administrative agency as well as the constitutional and statutory right to hire outside counsel. The Commission asserted further that Pursue had failed to exhaust its administrative remedies before filing suit in chancery court.

¶4. After the lawsuit was filed, Attorney General Mike Moore testified by affidavit that all parties-the Attorney General, the Commission, and McDaniel and Blair-orally agreed to clarify the payment terms of the retention agreement and that it was understood by all that Blair would not be paid out of any tax monies recovered. Instead, it was contemplated that if recovery was had, the Attorney General would apply to the Legislature for an appropriation to pay the firm an amount to be measured by the terms of the retention agreement. The Legislature could in its discretion appropriate all, part, or none of the Attorney General's recommendation for attorneys' fees, but in no event were they to be paid directly out of any tax monies recovered.

¶5. The trial court denied Pursue's request for summary judgment and granted the Commission's summary judgment motion. It ordered Pursue to produce documents, but on motion to reconsider and for protective order, stayed production until a final decision was rendered by this Court on appeal. Pursue appeals asserting that the Court should reverse the trial court's ruling granting summary judgment for the Tax Commission and direct entry of summary judgment in its favor.

## STANDARD OF REVIEW

¶6. Summary judgments are subject to de novo review, *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001), placing this Court in the same position as the Chancellor in its ability to examine the facts of the case.

## ANALYSIS

¶7. The Court must address two major issues: 1) whether it is within the Attorney's General power to appoint special assistant attorneys general to investigate on behalf of the Mississippi Tax Commission and 2) whether the retention agreement between these parties is valid. Pursue also raises the issue of whether the trial court erred in requiring it to divulge confidential information to the special assistant attorneys general. On cross-appeal, the State argues that Pursue's failure to exhaust administrative remedies makes

this appeal improper.

### I. WHETHER IT IS WITHIN THE ATTORNEY GENERAL'S POWER TO APPOINT SPECIAL ASSISTANT ATTORNEYS GENERAL TO INVESTIGATE ON BEHALF OF THE MISSISSIPPI TAX COMMISSION.

¶8. The State Tax Commission is vested with the exclusive jurisdiction of administration and enforcement of the income and severance tax laws. *See* Miss. Code Ann. §§ 27-7-1 *et seq*. (Rev. 1999). The Attorney General is vested with both the authority to appoint special assistant attorneys general and to assist state agencies in matters related to the state. Miss. Code Ann. § 7-5-7 (Rev. 1991) states in pertinent part:

> The attorney general is hereby authorized and empowered to appoint and employ special counsel, on a fee or salary basis, to assist the attorney general in the preparation for, prosecution, or defense of any litigation in the state or federal courts or before any federal commission or agency in which the state is a party or has an interest.

*See also* Miss. Code Ann. §§ 7-5-5 & -25; ***Gandy v. Reserve Life Ins. Co.,*** 279 So. 2d 648 (Miss. 1973) (attorney general may act separately or conjunctively with a state agency); ***Capitol Stages, Inc. v. State ex rel. Hewitt,*** 157 Miss. 567, 128 So. 759 (1930) (attorney general's common law duties to control and manage all litigation on behalf of the State, to intervene in any type of action of concern to the general public, including the right to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the State).

¶9. Pursue's primary argument on appeal concerns the legislative grant of authority to the Commission to employ the Attorney General's assistance. Our taxing statutes authorize the Attorney General to act on behalf of the Commission. Miss. Code Ann. § 7-5-51 (Rev. 1991) provides that the "attorney general, as well as the several district attorneys, is hereby authorized to institute or defend any suits arising out of any act or order of the tax commission or the public service commission affecting the laws and revenues of the state." This right is also set forth in Miss. Code Ann. § 7-5-55 (Rev. 1991) which grants the Attorney General the right to prosecute tax matters regarding income and privilege taxes, of which severance taxes are a type.

¶10. These statutes, while broad, are not exclusive. Miss. Code Ann. § 27-65-87 permits the State Tax Commission to employ the services of both the Attorney General and that of outside counsel. This section provides:

> The administration of this chapter is vested in and shall be exercised by the chairman of the state tax commission, except as otherwise herein provided, and the enforcement of any of the provisions of this chapter in any of the courts of the state shall be under the exclusive jurisdiction of the chairman of the state tax commission *who may require the assistance of an act through the attorney general,* prosecuting attorney of any county, or any district attorney, or any attorney for the state tax commission, *and may with the assent of the governor, employ special counsel* in any county to aid the prosecuting attorney, the compensation of whom shall be fixed by and paid only upon the approval of the governor; but the attorney general, district attorney or prosecuting attorney of any county shall receive no fees or compensation for services rendered in enforcing this chapter in addition to the salary paid to such officer.

Miss. Code Ann. § 27-65-87 (Rev. 2000)(emphasis added).

¶11. Statutory discord arises because § 27-65-87 does not define the extent to which the Attorney General may provide assistance to the Commission. It delineates only that the "assistance of an act" may be provided. Though the tax laws are strictly construed against the sovereign, with any uncertainty or vagueness resolved in favor of the taxpayer, *Lambert v. Mississippi Limestone Corp*., 405 So. 2d 131, 132 (Miss. 1981), the exclusive jurisdiction of the Commission does not exclude the Attorney General from participation as chief legal advisor and officer of the State. *Cf. Gandy*, 279 So. 2d at 649 (the Attorney General and the Commissioner of Insurance, both separately and conjunctively, have lawful authority to institute and maintain a suit seeking to restrain an insurance company from allegedly violating a statutory provision in connection with premium rate increases; the Attorney General is a constitutional officer possessed of all the power and authority inherited from the common law as well as that specifically conferred upon him by statute). In *Dunn Constr. Co. v. Craig*, 191 Miss. 682, 2 So. 2d 166 (1941), where the Tax Commission declined to assess or collect taxes, we held as follows:

> Responding further to the contention that the Legislature could never have intended for the state to have been left without a remedy in the event the Chairman of the State Tax Commission should arbitrarily refuse to assess and collect any tax due under the sales tax laws, or for any other reason failed to do so, *it may be observed that the Attorney General would have the right to bring a suit to enforce the payment of the tax in question, if in his judgment the public interest should so require*, since he is a constitutional officer possessed of all the power and authority vested in such an official at common law, and, in addition, such as have been conferred on him by statute, including the right "to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights."

*Id.* at 711-12, 2 So. 2d at 174 (emphasis added) (quoting *Capitol Stages Co. v. State ex rel. Hewitt*, 157 Miss. 576, 128 So. 763 (1930)).

¶12. Pursue argues that the Attorney General's acts in assistance are restricted to litigation. It emphasizes that the Commission may not delegate exclusive authority to tax and assess to the Attorney General. As the administrative body vested with the exclusive authority to assess taxes, the Commission examines returns through the Commissioner or his duly authorized agents. The statutory procedure found at Miss. Code Ann. § 27-7-49 is clear and simple and based on sound public principles necessary to ensure a fair and impartial tax system.

¶13. It does not necessarily follow, however, that litigation contemplates merely filing and defending lawsuits. It includes, rather, consulting with clients, reviewing records and documents, and participating in other matters preliminarily performed by lawyers. Pursue's argument characterizes Blair as a private attorney in charge of the investigation, usurping the Commissioner's role to assess and collect taxes. We disagree.

¶14. Our reading of the statute's language, "the assistance of an act" includes procuring and examining records and documents related to a tax investigation conducted on behalf of the State Tax Commission. Examining § 27-65-87 closely, it can be plainly seen that the statute gives the Tax Commissioner the power to both request the Attorney General's assistance *and* hire special outside counsel with the approval of the governor. The former power is at issue here. The Attorney General, testifying by affidavit, stated the following:

Prior to Mr. Blair's appointment as a Special Assistant for this project, I and/or members of my staff discussed the potential severance and income tax liability arising from gas contract settlements with Tax Commissioner Ed Buelow and/or members of his staff. The outcome of these discussions was that it was jointly agreed that the matter would be pursued with the appointment of Mr. Blair (and Kent McDaniel, Esq., now a County Judge) acting for the Attorney General in assistance to and on the behalf of the Tax Commissioner, as requested by tax Counsel Bobby Long. Blair was appointed and a Retention Agreement was later executed.

Blair and McDaniel were employed by the Attorney General. The facts indicate their assistance to the Tax Commission's investigation was the result of the Tax Commissioner's request to the Attorney General and not the Commissioner seeking the assistance of private outside counsel. No approval by the Governor is needed under these circumstances, and Pursue's argument to the contrary is without merit.

## II. WHETHER THE RETENTION AGREEMENT BETWEEN THE ATTORNEY GENERAL AND THE SPECIAL ASSISTANT ATTORNEYS GENERAL IS VALID.

¶15. Next, Pursue argues that the retention agreement between the Attorney General and Blair is invalid because Blair was to be paid a percentage and his expenses reimbursed out of the gross taxes collected. Sections 7-5-5 and 7-5-7 of Miss. Code Ann., governing the compensation of special counsel and investigators to the attorney general, permit payment on a fee, contract, or salary basis so long as payment is from the Attorney General's contingent fund or from other funds appropriated to the Attorney General's office. Miss. Code Ann. § 7-5-5 (Rev. 1991) provides that:

To further prosecute and insure such purposes, the attorney general is hereby further expressly authorized, empowered, and directed to employ such additional counsel as special assistant attorneys general as may be necessary or advisable, on a fee or contract basis, and the attorney general shall be the sole judge of the compensation in such cases.

Miss. Code Ann. § 7-5-7, which governs special counsel and investigators, provides:

The attorney general is hereby authorized and empowered to appoint and employ special counsel, on a fee or salary basis, to assist the attorney general in the preparation for, prosecution, or defense of any litigation in the state or federal courts or before any federal commission or agency in which the state is a party or has an interest.

* * *

The compensation of appointees and employees made hereunder shall be paid out of the attorney general's contingent fund, or out of any other funds appropriated to the attorney general's office.

The retention agreement provides:

A. Attorneys' fees of (1) fifteen percent (15%) of the net recovery received by the State from any and all claims initiated via inquiry and/or demand letter by the Firm and/or prosecuted by or through the Mississippi State Tax Commission ("Commission"), regardless of whether such claims are settled at any time after inquiry or prosecuted to final decision by the Commission; or (2) twenty-five percent (25%) of the net recovery by the State from any such claims which are resolved through litigation in

any court or following an appeal of a judicial decision or Commission decision to the Mississippi Court of Appeals and/or the Mississippi Supreme Court.

B. All reasonable and necessary costs of litigation, including, but not limited to, court costs, travel, witness fees, consultant and expert fees and expenses, as shall be approved by the Attorney General shall initially be borne entirely by the Law Firm but shall be reimbursed from any gross recoveries from the pursuit of such claims on a case-by-case basis.

¶16. The Attorney General and the Tax Commission later orally clarified the agreement to stipulate that Blair be paid through legislative appropriations. Whether payment is obtained directly from taxes collected or from other state revenues, Pursue maintains it is still a continency fee arrangement and that such an arrangement renders the agreement void.

¶17. Pursue relies on our holding in *State ex rel. Brown v. Poplarville Sawmill Co.*, 119 Miss. 432, 81 So. 124 (1919), to support its argument that Blair's compensation is void. There we voided the contract purporting to pay a private attorney to prosecute suits concerning public lands a percentage of the recovery as a fee. Section 2903 of Miss. Code 1906 (Hemingway's Code, § 5238), the controlling statutory section, provided that:

The land commissioner may prosecute suits in the name of the state, concerning the public lands, through the attorney general, a district attorney, or some attorney at law employed by him for that purpose, with the consent of the governor. Section 2903, Code of 1906.

The Governor may engage counsel to assist the Attorney General in cases to which the state is a party when, in his opinion, the interest of the state requires it, subject to the Legislature in providing compensation for such services.

Section 2382, Code of 1906.

¶18. We rejected the argument that the statute giving the land commissioner power to employ counsel, with the consent of the Governor, carries with it the right to fix compensation, finding that neither the land commissioner nor the Governor had authority under the statute to pay a private attorney a percentage of the State's property or to reimburse fees for bringing suit. The underlying principles applied in *Poplarville*, however, do not apply here.

¶19. Section 2382 of the Code of 1906 is the precursor of Miss. Code Ann. § 7-5-7 which allows the Attorney General to employ special counsel "on a fee or salary basis" which is "reasonable compensation" and "in no event to exceed recognized bar rates for similar services." Miss. Code Ann. § 7-5-7. The statute places no restrictions upon the type of fee the Attorney General can negotiate, even though the Legislature could have restricted the use of contingency fees if it so desired. The basis for the conclusions this Court reached in *Poplarville* hinged upon the special counsel's desire to continue prosecuting land claims on behalf of the land commissioner (and presumably reap the payments associated with his contract) against the land commissioner's express orders. *See Poplarville Sawmill Co.*, 119 Miss. at 440, 81 So. at 127 ("It certainly would be insufficient to furnish the attorney for the complainant with an interest in the subject-matter of the litigation so as to continue the litigation regardless of the wishes of his client.").

¶20. No such divergence of interest exists in the case sub judice. The Tax Commissioner, Attorney General, and Blair are of one mind in pursuing the potential tax claims the State has against Pursue. The retention

agreement further states that the Attorney General retained control over "all material matters pertinent to these claims and any litigation arising therefrom." Not only does this clause eliminate the conflict this Court faced in *Poplarville*, it reiterates the independent power the Attorney General has to prosecute claims on behalf of the State which we examined above.

¶21. Even more compelling is the freedom provided the Legislature in the instant case who could independently determine the fee payable to Blair for his service, even to the extent that it could refuse to pay. We are therefore unpersuaded by Pursue's arguments. The chancellor's holding is affirmed.

### III. WHETHER THE TRIAL COURT ERRED IN REQUIRING PURSUE TO DISCLOSE CONFIDENTIAL DOCUMENTS TO THE SPECIAL ASSISTANT ATTORNEYS GENERAL.

¶22. Next, Pursue contends that any disclosure of its income and severance tax returns to the Attorney General and the special assistant attorneys general violates the confidentiality provisions of the tax statutes, which mandate that only the Commission and its employees are privy to such information. The confidentiality laws for income and severance taxes, however, list exceptions that authorize disclosure to the Attorney General in Miss. Code Ann. § 27-7-83.

¶23. Miss. Code Ann. § 27-7-83 (5) (Rev. 1999) permits the Commissioner to disclose (1) statistics to the Attorney General, provided particular reports or returns cannot be identified; (2) tax returns and tax return information to assist the Attorney General in the defense of an action brought by a taxpayer for the refund of tax; and (3) tax returns and tax return information to assist the Attorney General in bringing an action to recover tax or penalty imposed upon a taxpayer. Likewise, Miss. Code Ann. § 27-65-81 authorizes the Commissioner to disclose severance information contained on the application, returns or reports to the "Attorney General, or any other attorney representing the state in any action in respect to the amount of tax under the provisions of this chapter." Disclosure to the Attorney General is also consistent with Miss. Code Ann. § 27-7-79(2) (Supp. 2001), authorizing the Commissioner, "for the purpose of ascertaining the correctness of any return, or for the purpose of making a return where none has been made . . . by any agent designated by him for that purpose, to examine any books, papers, records, or memoranda, bearing upon the matter to be included in the return. . . ."

¶24. The record further reflects that the Attorney General and the Tax Commission entered into a confidentiality agreement establishing that returns and documentary information would be protected and not be used or divulged for any other purposes than to determine whether lawful taxes have been paid. Based on the foregoing, we find the chancellor did not err on this particular point.

### IV. WHETHER PURSUE'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES MAKES THIS APPEAL IMPROPER.

¶25. In its cross-appeal, the Commission asserts that Pursue's appeal must be dismissed because Pursue has failed to exhaust its administrative remedies. The doctrine of exhaustion of administrative remedies does apply to actions involving the State Tax Commission. *See, e.g.*, *Davis v. Barr*, 250 Miss. 54, 157 So. 2d 505 (1963). In *Davis*, we held that the taxpayer could not pursue an original action in chancery court to contest an income tax assessment by the Commission. The assessment in that case followed the statutory procedures provided by the taxing scheme. In the case sub judice, Pursue seeks relief on the theory that the proposed taxation is without authority of law. Therefore, Pursue's remedy is a suit in chancery court to

enjoin the procedure. *See Fondren v. State Tax Comm'n*, 350 So. 2d 1329 (Miss. 1977). We find no merit in this argument.

¶26. The Commission also urges this Court to require certain discovery documents to be produced immediately. Although the trial court initially required Pursue to comply with these discovery requests, upon rehearing the chancellor stayed production pending this appeal. The Commission argues that under Miss. Code Ann. § 27-7-79(2) the Tax Commissioner is authorized "by any agent designated by the Commissioner for that purpose" to examine books, papers, any records, or other memoranda of any sort bearing upon the matter required to be included in the return.

¶27. Pursue's complaint sought to enjoin the Commission from utilizing Blair to conduct the tax examination and sought a declaratory judgment on its legal rights. As we have found Blair to have the authority to request and review the documents on behalf of the Commission, we therefore see no further purpose for the stay in discovery. However, we decline to order the stay be lifted and leave this determination to the chancellor to make in light of this opinion.

## CONCLUSION

¶28. For the foregoing reasons, we affirm the judgment of the Rankin County Chancery Court and remand the case to that court for further proceedings consistent with this opinion.

¶29. **AFFIRMED AND REMANDED.**

**McRAE AND SMITH, P.JJ., COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

1. Several years after the investigation commenced, McDaniel withdrew from the case after his appointment as a Rankin County Judge, and is, therefore, not involved in this litigation.