ON MOTION TO AMEND MANDATE TO REFLECT OPINION OF THE COURT

DICKINSON, Presiding Justice,
for the Court:
¶ 1. The Auditor’s unopposed Motion to Amend Mandate to Reflect Opinion of the Court is granted. The prior opinions are withdrawn and these opinions are substituted therefor.
¶ 2. A corporation settled a lawsuit by agreeing to pay the State of Mississippi $50 million, $10 million of which it disbursed directly to outside counsel retained by Attorney General Jim Hood to pursue the litigation. The chancery court held that the payment was proper. But because the law requires that outside counsel retained by the Attorney General to pursue litigation in “the state or federal courts” be paid from his contingent fund or from other funds the Legislature appropriates to his office,1 and because the Mississippi Constitution requires obligations and liabilities to the State to be paid “into the proper treasury,”2 we reverse.
BACKGROUND FACTS AND PROCEEDINGS
¶ 3. To pursue claims against Microsoft for alleged violations of the Mississippi antitrust and consumer-protection laws, Mississippi Attorney General Jim Hood signed a contingency-fee contract (“Retention Agreement”) with Hazzard Law, LLC, which, in turn, associated other law firms to assist with the litigation. Hazzard Law, LLC, and its associated counsel are referred to collectively herein as “Retained Counsel.” The chancery court dismissed the antitrust claims, but allowed the consumer-protection claims to proceed.
¶ 4. Microsoft and the Attorney General, acting on behalf of the State of Mississippi, signed a settlement agreement that required Microsoft to provide up to $60 million in vouchers for Mississippi residents, and to pay the State of Mississippi $50 million in cash. However, the settlement agreement provided that $10 million of the cash money was to be distributed to the trust account of one of the outside lawyers in Houston, Texas.
¶ 5. State Auditor Stacey Pickering wrote Hazzard, stating that payment of settlement funds directly to outside counsel violated Mississippi law. And because the same issue was pending in the Circuit Court of Hinds County in another case,3 Auditor Pickering reserved all objections to the settlement until after the circuit court — and, if appealed, the Mississippi Supreme Court — resolved the issue.
¶ 6. Hazzard responded to the Auditor’s letter by filing a petition in chancery court, seeking approval of the attorney-fee payment. Pickering filed — and the chancellor granted — a Motion to Intervene, based on *615Mississippi Code Section 7-7-211(g), which requires the State Auditor to investigate and recover any public funds improperly withheld, misappropriated, or illegally spent. The Auditor also filed a motion to have the $10 million held in trust disbursed to the State.
¶ 7. The chancellor ruled in favor of Hazzard and ordered the settlement funds distributed directly to Hazzard and other retained counsel. Pickering appealed to this Court, and the Attorney General cross-appealed, claiming the Auditor’s intervention was untimely.
ANALYSIS
¶ 8. Because the issues in this case so closely mirror those in Pickering v. Lang-ston, a case we also hand down today, much of our analysis will be the same. And as we did in that case, we wish to make clear in this case that our opinion should not be read as calling into question either Retained Counsel’s right to be paid or the validity of the Retention Agreement. Indeed, the Auditor has made no such challenge, nor has he argued that the Attorney General was prohibited, either from depositing the funds into his contingent fund and paying Retained Counsel, or from paying the attorney fees from funds appropriated to his office by the Legislature. We address today only the narrow question of whether Mississippi law allows public-settlement funds due to the State of Mississippi to be paid directly to outside counsel.
Section 7-5-7 requires the Attorney General to pay private attorneys he retains from his contingent fund or from other funds appropriated to his office by the Legislature.
¶ 9. By enacting Section 7-5-7, the Legislature limited to two, the sources from which the Attorney General may pay private attorneys he engages to pursue litigation on behalf of the State of Mississippi, in Mississippi courts:
The compensation of appointees and employees made hereunder shall be paid out of the attorney general’s contingent fund, or out of any other funds appropriated to the attorney general’s office.4
¶ 10. The statute’s mandatory term “shall” is not a suggestion-it is a mandate.5 No one asserts that the $10 million came from “other funds appropriated to the attorney general’s office.” And we hold that the Attorney General’s contingent fund does not include Microsoft’s checking account (the source of the $10 million), nor does it include the private attorney’s trust account to which Microsoft transferred the funds.
¶ 11. Section 7-5-7’s restrictions were in place when the Attorney General and outside counsel signed the contract. They cannot now claim they are not subject to it.
¶ 12. The Attorney General advances several arguments in support of Microsoft’s direct payment of the $10 million to the private attorney’s bank account. We will address each of them.
A. The Mississippi Consumer Protection Act
¶ 13. The Attorney General argues that Microsoft’s direct payment of contingency fees and expenses was authorized by Section 75 — 24—19(l)(b) of the Mississippi Consumer Protection Act (“MCPA”), which allows the Attorney General to recover “investigative costs and a reasonable *616attorney’s fee.”6 But the statute says nothing about the method of payment, and the provisions of that statute come into play only “if the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5.”7
¶ 14. This case was settled with no trial and no such finding. In fact, in her order approving the settlement and final judgment, the chancellor dismissed the case “on the merits, with prejudice in favor of Microsoft.” (Emphasis added.) And the settlement agreement, itself, provided:
No Admission. By entering into this Settlement Agreement, Microsoft does not admit any liability or wrongdoing or the truth of any of the claims or allegations in the Mississippi Action....
Plaintiff agrees not to represent, publicly or otherwise, that the settlement in any way embodies, reflects, implies or can be used to infer any culpability by Microsoft ....
(Emphasis added.)
¶ 15. And even if the MCPA did allow an award of attorney fees in this case, none was awarded. The settlement agreement specifically provided for Microsoft to pay $50 million to the State of Mississippi (although $10 million of that amount was to be distributed to a Texas law firm); and it further provided that “Microsoft played no part in negotiating the fees and expenses to be paid to plaintiffs counsel....”
¶ 16. While Section 75-24-19(l)(b) of the MCPA does allow the Attorney General to recover “investigative costs and a reasonable attorney’s fee,” the costs and fees awarded by the court are separate and apart from the primary claim. Based on the clear language of the statute, the chancellor’s order, and the settlement agreement, we find this argument has no merit.
B. The Attorney General’s Authority
¶ 17. The Attorney General next states that he has “authority to retain contingent fee lawyers, and honor his contracts with them.” In support, he provides two arguments, and we address them both.
1. The Attorney General’s common-law authority to enter into and hon- or contingency-fee agreements is subject to statutory law.
¶ 18. We agree with the Attorney General that he has common-law “authority to negotiate, and enter into contingency fee agreements with retained counsel for civil litigation on behalf of the State.”8 We said as much in Pursue Energy Corp. v. Mississippi Tax Commission,9 in which a former attorney general faced the question of how to pay outside counsel.
¶ 19. In Pursue Energy, then-Attorney General Mike Moore hired outside counsel to help the State Tax Commission assess and collect taxes from various entities, including Pursue Energy Corporation,10 which challenged the retention agreement, arguing that it created a conflict of interest because it provided for the outside *617counsel to collect tax revenue on a contingent basis.11
¶ 20. Attorney General Moore — speaking on behalf of all parties to the contingent-fee contract — clarified by affidavit the terms of the retention agreement, stating that
it was understood by all that [the attorney] would not be paid out of any tax moneys recovered. Instead, it was contemplated that if recovery was had, the Attorney General would apply to the Legislature for an appropriation to pay the firm an amount to be measured by the terms of the retention agreement.”12
¶ 21. In other words, the full amount recovered would be paid over to the State, and thé attorneys would be paid by separate funds appropriated by the Legislature. Nevertheless, Pursue Energy argued the retention agreement was invalid.
¶ 22. For several reasons, we rejected Pursue Energy’s argument, first stating that Section 7-5-7 “places no restrictions upon the type of fee the Attorney General can negotiate....”13 Next, we stated that the agreement did not create a conflict of interest, because there was “[n]o ... divergence of interest.” Finally — and more on point to the issue in this case — we stated:
Even more compelling is the freedom provided the Legislature in the instant case who could independently determine the fee payable to [the attorney] for the service, even to the extent that it could refuse to pay.14
And in holding that the contingent-fee agreement was not illegal, we said:
Sections 7-5-5 and 7-5-7 ... governing the compensation of special counsel and investigators to the attorney general, permit payment on a fee, contract, or salary basis so lony as payment is from the Attorney General’s continyent fund or from other funds appropriated to the Attorney General’s office.15
¶ 23. So, while we agree that the Attorney General does have authority to enter into contingency-fee agreements with outside counsel, those agreements — when made — are subject to Mississippi law and, in particular, Section 7-5-7.
¶ 24. Contracts with lawyers hold no special privilege. They are — as are all other contracts — subject to, and restricted by, applicable law. For instance, attorneys who enter into contingent-fee contracts in workers’ compensation cases are restricted by statute to an attorney fee of twenty-five percent, regardless of any contract provision to the contrary. And the statutory limitation does not render the contract void; it simply limits the amount the attorney legally may be paid.
2. Both Sections 7-5-5 and 7-5-7 restrict the sources from which the Attorney General may pay outside counsel.
¶ 25. The Attorney General next turns to Mississippi statutory law and makes four arguments. His first three arguments address the plain meaning and application of Sections 7-5-5 and 7-5-7, and his final argument addresses his contingent fund.

*618
a. The Plain Meaning of Sections 7-5-5 and 7-5-7

¶ 26. Section 7-5-5. The Attorney General argues that Section 7-5-5 empowers him to retain special assistant attorneys general on a fee or contract basis, and that he is the sole judge of compensation for such assistants. And so long as his determination of compensation complies with Mississippi law, we agree.
¶ 27. Section 7-5-5 empowers the Attorney General to employ three assistants to “devote their time and attention primarily to defending and aiding in the defense in all courts of any suit, filed or threatened, against the State,” and “[w]hen circumstances permit, such assistants (the ones hired primarily to defend) may perform any of the attorney general’s powers and duties,” and
[t]o further prosecute and insure such purposes, the attorney general is ... authorized ... to employ such additional counsel as special assistant attorneys general ... on a fee or contract basis; and the attorney general shall be the sole judge of the compensation in such cases.16
¶ 28. So Section 7-5-5 establishes the Attorney General’s authority to employ assistants who “devote their time and attention primarily to defending and aiding in the defense” of the State of Mississippi. But the employment of outside counsel for a single case — which occurred in this case — is covered by the next section, Section 7-5-7. And if we assigned to Section 7-5-5 the interpretation suggested by the Attorney General, Section 7-5-7 would be meaningless.
¶29. Section 7-5-7. This section addresses the Attorney General’s authority to employ attorneys “to assist the attorney general in the preparation for, prosecution, or defense of any litigation....”17 It provides:
The attorney general is hereby authorized and empowered to appoint and employ special counsel, on a fee or salary basis, to assist the attorney general in the preparation for, prosecution, or defense of any litigation in the state or federal courts or before any federal commission or agency in which the state is a party or has an interest. The attorney general may designate such special counsel as special assistant attorney general, and may pay such special counsel reasonable compensation to be agreed upon by the attorney general and such special counsel, in no event to exceed recognized bar rates for similar services....

The compensation of appointees and employees made hereunder shall be paid out of the attorney general’s contingent fund, or out of any other funds appropriated to the attorney general’s office.

(Emphasis added.) In Pursue Energy, this Court addressed this very issue by stating:
Sections 7-5-5 and 7-5-7 ... governing the compensation of special counsel and investigators to the attorney general, permit payment on a fee, contract, or salary basis so long as payment is from the Attorney General’s contingent fund or from other funds appropriated to the Attorney General’s office.18
¶ 30. The Pursue Court’s statement could not have been more clear: the restriction on sources from which the Attorney General is authorized to pay special *619counsel—-whether employed under Section 7-5-5 or Section 7-5-7-applies, regardless of the fee arrangement.

b. The “Contingent Fund” contemplated by Mississippi Code Section 7-5-7 does not include Microsoft’s bank account or a private attorney’s trust account.

¶ 31. Next, the Attorney General argues that his “contingent fund” is not limited to funds appropriated by the Legislature. Without addressing what the Attorney General’s contingent fund does include, we are persuaded it includes neither Microsoft’s cheeking account nor a private lawyer’s trust account.
C. Deference to the Attorney General’s Interpretation
¶ 32. The Attorney General next argues that, even if Sections 7-5-5 and 7-5-7 “allow room for a different interpretation” than his, this Court should defer to him. As stated earlier, we do not find these sections to be ambiguous, so this argument has no merit.
D. The Auditor’s Right to Seize Microsoft’s Payment to Retained Counsel
¶ 33. The Attorney General next advances several arguments in support of his assertion that the Mississippi Auditor should not be allowed to seize the Microsoft payment of attorney fees.

Public Funds

¶ 34. First, he argues that the $10 million was not public funds. But the settlement agreement clearly sets forth that, by sending the $10 million to the attorneys, Microsoft was making a payment to the State of Mississippi. The only distinction between the $10 million and the remaining $40 million was where the money was sent. Money paid to the State of Mississippi in settlement of a lawsuit is public money. This argument has no merit.

Attorney’s Lien

¶35. The next argument is that the attorney fee is subject to an attorney’s lien. Citing several cases, the Attorney General argues that attorneys have a paramount lien on funds they hold for the payment of attorney fees. In Collins v. Schneider, this Court stated that “an attorney has a lien on the funds of his client for the services rendered in the proceeding by which the money was collected.”19 But a lien is of no value, except to secure payment to which the attorney is lawfully entitled. As stated earlier, for example, an attorney prosecuting a workers’ compensation case certainly would have no lien on funds that exceeded the twenty-five percent allowed by Mississippi statute for attorney fees.20 In this case, no payment is due outside counsel until the parties comply with Mississippi law-and, specifically, Section 7-5-7.
¶ 36. The common-law concept of attorney’s liens is subject to modification by the Legislature. And our Legislature has carved out a special payment requirement for private lawyers who work for the Attorney General; they may be paid only from the Attorney General’s contingent fund, or from funds appropriated by the Legislature.21 The statute’s mandatory language includes no other options for pay*620ment by way of an attorney’s lien. This argument has no merit.

Waiver

¶37. The Attorney General argues that the Auditor waived the State’s claim by his seven-month delay in intervening in the trial-court proceedings. In addressing a similar issue in a case in which the Secretary of Health and Human Services sought recovery of federal funds improperly paid to a health-care provider who had been informed that its payments were proper, the United States Supreme Court stated:
When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.22
The Court went on to state that “[t]he question is whether the Government has entirely forfeited its right to the money,” and that
Men must turn square corners when they deal with the Government.... This observation has its greatest force when a private party seeks to spend the Government’s money. Protection of the public first requires that those who seek public funds act with scrupulous regard for the requirements of the law.23
¶ 38. The Attorney General cites cases24 not applicable to the state government. In this case, the Auditor protested the attorney-fee arrangement by sending a letter to one of the attorneys employed by the Attorney General. In that letter, the Auditor stated:
It is the formal position of the Office of the State Auditor that the diversion of $10 million from the State’s settlement proceeds to outside counsel without pri- or legislative approval is a violation of Miss.Code. Ann. § 7-5-7 and Mississippi Supreme Court precedent.
This auditor sent this letter seven days following the chancery court order approving the settlement. This eliminates any argument that the Auditor “entirely forfeited” the State’s claim. This issue has no merit.

The Auditor’s Remedy

¶ 39. The Attorney General next argues that the Auditor has no remedy because “the relief sought is unsupported by general Mississippi contract law and would violate the constitutional prohibition on impairment of contracts.”

1. No void contract provisions

¶ 40. The Attorney General argues that — because no contract provision is illegal or void — the contract must be upheld. The contract, itself, establishes that Microsoft paid $50 million to the State of Mississippi. The fact that $10 million of the State’s money was (according to the settlement agreement) “distributed” to the attorneys rather than the State does not change the material provisions of the *621agreement. In fact, the Attorney General and Microsoft specifically agreed in the settlement agreement that “Microsoft played no part in negotiating the fees and expenses to be paid to plaintiffs counsel and takes no position as to whether those fees and expenses are reasonable or appropriate.” This argument has no merit.

2. Constitutional and contract law

¶ 41. The Attorney General’s final argument is that
neither the Auditor nor the Legislature are authorized to breach the contingency fee contract. To the extent the Auditor intends that retained counsel be paid less than what was contracted after “running it by” the Legislature and a Governor’s veto, that would trample on retained counsel’s constitutional property rights.
¶ 42. We fail to see how “retained counsel’s constitutional property rights” are at issue. The settlement agreement does not establish that retained counsel are entitled to anything. As stated above, the settlement agreement specifically provides that “Microsoft played no part in negotiating the fees and expenses to be paid to plaintiffs counsel and takes no position as to whether those fees and expenses are reasonable or appropriate.”
¶ 43. The settlement agreement says nothing about the purpose of the $10 million — only where it was to be sent. The Attorney General agreed in the settlement agreement that the $10 million was being paid to “the State of Mississippi.” The fact that $10 million of the State’s money was “distributed” to a particular bank account in Houston, Texas, does not create or vest “constitutional property rights” in anyone. This argument is without merit.
¶ 44. The remainder of the Attorney General’s brief is dedicated to his cross-claim, arguing that the Auditor waived the State’s claim. As stated above, this argument has no merit.

Section 100 of the Mississippi Constitution

¶ 45. Even if the Legislature had not carved out the statutory exception to the common-law attorney’s lien, Section 100 of the Mississippi Constitution does not permit the Legislature to forgive, or even diminish, liquidated obligations to the State; nor does it permit Microsoft — or any other defendant — to satisfy obligations owed to the State by remitting settlement payments to private lawyers. Section 100 states:
No obligation or liability of any ... corporation held or owned by this state ... shall ever be remitted, released or postponed, or in any way diminished by the Legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the Legislature from providing by general law for the compromise of doubtful claims.25
¶ 46. The Legislature constitutionally may permit the Attorney General to compromise doubtful claims. But once the claim is settled, and the amount due is determined and agreed through compromise, the claim and debt become liquidated, and full payment of the amount due must be made into the proper State treasury. Section 100 clearly provides that, in order to extinguish the debt, payment of the amount due must be made into the proper treasury. The issue here is not *622whether the debt was diminished, but rather whether the amount due was paid into the proper state treasury.
E. The Attorney General’s Cross-Appeal
¶ 47. Our original opinion erroneously reflected that we reversed and remanded the chancellor’s decision to allow the Auditor to intervene. The Auditor filed a motion asking us to correct the error, and the Attorney General did not respond. We affirm the chancellor’s order allowing the Auditor to intervene.
CONCLUSION
¶ 48. The settlement agreement provided that the $10 million at issue in this case was to be paid “to the State of Mississippi.” That is where it must be paid — and distributed. The plain language of Section 7-5-7 mandates that outside counsel retained by the Attorney General be paid only from the Attorney General’s “contingent fund,” or from funds appropriated to the Attorney General by the Legislature. This Court so held in Pursue Energy.26 And our Constitution required the $10 million in State funds to be paid into a proper treasury. Because that was not done here, and because the parties did not comply with Section 7-5-7, we reverse the chancellor and remand this matter for further action consistent with this opinion. Since the cross-appeal is without merit, we affirm the trial court’s order which granted the Auditor’s Motion to Intervene.
¶ 49. ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. PIERCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., RANDOLPH AND LAMAR, JJ. KING, J„ CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.

. Miss.Code Ann. § 7-5-7 (Rev.2002).

. Miss. Const. art. 4, § 100 (1890).

.Pickering v. The Langston Law Firm, No. 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CIV.

. Miss.Code Ann. § 7-5-7 (Rev.2002) (emphasis added).

. Franklin v. Franklin, 858 So.2d 110, 115 (Miss.2003).

. Miss.Code Ann. § 75 — 24—19(l)(b) (Rev. 2009).

. Id.

. We note here the obvious, that is, that any such contingency-fee contract would be — as are all contracts governed by Mississippi law — subject to Mississippi constitutional and statutory provisions and limitations.

. Pursue Energy Corp. v. Miss. State Tax Comm’n, 816 So.2d 385 (Miss.2002).

. Id. at 386-87.

. Id. at 387.

. Id. (emphasis added).

. Id. at 391.

. Id. at 392.

. Id. at 390 (emphasis added).

. Miss.Code Ann. § 7-5-5 (emphasis added).

. Miss.Code Ann. § 7-5-7.

.Pursue Energy, 816 So.2d at 390 (emphasis added).

. Collins v. Schneider, 187 Miss. 1, 192 So. 20,22 (1939).

. See Miss.Code Ann. § 71-3-63(3) (Rev. 2011).

.Miss.Code Ann. § 7-5-7.

. Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

. Id., 104 S.Ct. at 2225-26; see also Pace v. State ex. rel. Rice, 191 Miss. 780, 4 So.2d 270, 277 (1940) ("[T]he state cannot abdicate its duty as trustee of property in which the whole people are interested, any more than it can surrender its police powers in the administration of government and in the preservation of peace and order.”).

. Setinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So.2d 954, 964 (Miss.1999); Eastline Corp. v. Marion Apartments, Ltd., 524 So.2d 582, 584 (Miss.1988).

. Miss. Const. art. 4, § 100.

. Pursue Energy, 816 So.2d at 390.